UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------x

ROBIN COLLYMORE,

        Plaintiff,

    -v-                               No. 16-CV-08270-LTS

CITY OF NEW YORK, LISA MALUF,
MATTHEW AUSTIN, and DAVID KIRKS,
in their individual capacities and as aiders and
abettors,

        Defendants.

--------------------------------------------------------x

<u>MEMORANDUM OPINION AND ORDER</u>

        Plaintiff Robin Collymore ("Collymore") brings this civil rights action pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e <u>et</u> <u>seq.</u> ("Title VII"), 42 U.S.C. §§ 1981, 1983, the First and Fourteenth Amendments to the United States Constitution, New York State Human Rights Law, Executive Law § 296 <u>et</u> <u>seq.</u> ("NYSHRL"), and the Administrative Code of the City of New York, § 8-107 et. seq. ("NYCHRL"), against the City of New York (the "City") and, in their individual capacities, Lisa Maluf ("Maluf"), Matthew Austin ("Austin"), and David Kirks ("Kirks") (collectively "Defendants"). In her seven-count Amended Complaint ("Am. Compl."), Plaintiff, a former employee of the New York City Department of Information Technology and Telecommunications ("DoITT"), alleges that she experienced a hostile work environment on the basis of her race and sex, sexual harassment, racial discrimination, and retaliation for complaining about discrimination and speaking about matters of public concern, before being "constructively discharged" from her position at DoITT. (Docket Entry No. 36.)

The Court has jurisdiction of this action pursuant to 28 U.S.C. §§ 1331, 1343, and 1367.

Defendants now move, pursuant to Federal Rule of Civil Procedure 12(b)(6), to dismiss all of Plaintiff's claims against them. (Docket Entry No. 41.)

The Court has considered the parties' submissions carefully. For the following reasons, Defendants' motion is granted and the Amended Complaint is dismissed.


BACKGROUND

The following facts are alleged in the Amended Complaint. Plaintiff's non-conclusory factual allegations are taken as true for purposes of this motion practice. Plaintiff, an African-American woman, was a provisional employee and Project Manager, with the civil service title of Computer Software Specialist, at the DoITT in the Emergency Communications Transformation Program ("ECTP") from August 3, 2015, to June 28, 2016. (Am. Compl. ¶¶ 1, 18, 54.) The DoITT is an agency responsible for providing infrastructure and telecommunications services to the City. (Id. ¶ 22.) During the relevant period, Maluf was Plaintiff's indirect supervisor and acting chief of staff and Deputy Program Manager for the ECTP at the DoITT, Austin was Plaintiff's direct supervisor and Director of ECTP Project Management at the DoITT, and Kirks was Plaintiff's indirect supervisor and Associate Commissioner and Director of ECTP. (Id. ¶¶ 25, 30, 35, 62.)

Plaintiff alleges that she "experienced unwanted touching[]" from Maluf in their one-on-one meetings and that, "at any given time" and "repeatedly," Maluf would "touch and rub Plaintiff's arm, pat Plaintiff's leg, rest her arm on [Plaintiff's] back and or grab her hands and legs." (Id. ¶¶ 62-63.) In or around September 2015, Plaintiff allegedly "told Maluf that she

did not like being touched," but Maluf nonetheless continued to touch her. (Id. ¶¶ 65-66, 119.) Plaintiff alleges that she complained about Maluf's touching to other ECTP employees, who informed her that Maluf "regularly touched others the same way." (Id. ¶ 67.) Plaintiff's allegations regarding unwanted touching by Maluf do not characterize the touching as sexual or related to Plaintiff's sex or gender, although she characterized some of her complaints about Maluf as ones of "sexual harassment." (See id. ¶¶ 63-65, 67-68, 74, 119, 132, 160-163, 167.)

Plaintiff alleges that, after she complained about Maluf's conduct, Plaintiff's direct supervisor, Austin, began to scrutinize her work "more closely than" the work of her colleagues, "check on [her] whereabouts" on a daily basis, force her to work through lunch despite knowledge she was ill, "sabotage" her work, and "silence and humiliate" her at meetings. (Id. ¶¶ 70-83.) Plaintiff alleges that Austin designated her as "AWOL," or Absent Without Location, when she volunteered to work at an appearance by the Pope, despite her compliance with the requisite location disclosure protocol, but that Austin later withdrew the designation. (Id. ¶¶ 72-73.) Plaintiff asserts that her blood pressure increased and that she began to experience more migraines and miss work and that, despite their awareness that she had to eat lunch at a prescribed time, Maluf and Austin "would" insist that she work through lunch when meetings were scheduled. (Id. ¶¶ 69, 76-77.) She also alleges that, at weekly staff meetings, Austin "would" delete Plaintiff's slides so that she could not present at the meetings, and then chastise her for not uploading the slides, and that Austin "attacked" Plaintiff verbally in front of a group of people for completing her work ahead of schedule and that Austin and Maluf "peppered [her] with hostile questions" when she made a presentation requesting funds to obtain a projector. (Id. ¶¶ 79-82.)

Plaintiff alleges that Austin and Maluf treated her differently from her white coworkers "because she was black," and that the treatment was "[s]imilar to other people who identified as minorities in the unit." (See id. ¶¶ 79-81, 93-118, 171-91.) She claims that Austin would interrupt her at meetings and speak to her "brusquely," but that he did not treat white employees in such a manner. (Id. ¶ 96.) On one occasion, Plaintiff alleges, Austin refused to answer a number of her questions but proceeded to answer the same questions when a white employee asked the questions. (Id. ¶ 110.) She alleges that her requests for training were denied, and that her repeated requests for overtime were met with chastisement or denied, while white employees were permitted to work overtime without prior requests. (Id. ¶¶ 100, 102-04, 177, 187.) Plaintiff alleges that her work schedule was changed in November 2015 to bar her from requesting overtime. (See id. ¶¶ 121, 132.) Plaintiff also alleges that a white counterpart who had the same job responsibilities received the same compensation as Plaintiff, although the white employee had significantly less education and experience. (Id. ¶¶ 97-99.) Plaintiff further alleges that she was removed from meetings and agendas, and that white colleagues would make certain presentations on her behalf at meetings because the material would be better received by Maluf and Austin. (Id. ¶¶ 113-16.)

Plaintiff alleges that Defendants retaliated against her for making several complaints about her working conditions. (Id. ¶¶ 15, 65, 67-68, 119-45, 192-98.) In September 2015, Plaintiff first complained to Maluf and other staff members about the unwanted touching. (Id. ¶¶ 65, 67-68, 119.) In or around November 2015, Austin yelled at her during a meeting and changed her hours so that she could not request overtime. (Id. ¶¶ 120-21.) In January and April of 2016, Plaintiff filed EEOC charges of discrimination. (Id. ¶¶ 125, 127.) Plaintiff alleges that Austin yelled at her within days of her EEOC charge. (Id. ¶ 126.) She also filed an internal

complaint with the DoITT's Equal Employment Opportunity Office ("EEOO") around April 2016.  (<u>Id.</u> ¶ 128.)  Following her lodging of these complaints, Plaintiff alleges that Maluf and Austin continued to yell at her, deny her training and overtime opportunities, exclude her from meetings, and require her to work before her scheduled shift.  (<u>Id.</u> ¶¶ 129-34.)  Plaintiff then complained to Kirks and the Director of Labor Relations and Discipline.  (<u>Id.</u> ¶¶ 138-39.) Plaintiff alleges that all of her internal complaints were ignored.  (<u>Id.</u> ¶¶ 143-45.)

On December 7, 2015, Plaintiff allegedly attended a meeting with Austin and approximately 15 other people at which Austin instructed the attendees to hide certain information about the ECTP that was relevant to an ongoing investigation being conducted by the New York City Department of Investigation ("DOI") by placing the documents on a certain computer drive.  (<u>Id.</u> ¶¶ 146-47.)  Plaintiff allegedly "complained about the possible ethics and code of conduct violations to her union representative" and internal DoITT management in the Office of Labor Relations and Discipline on or about January 15, 2016.  (<u>Id.</u> ¶¶ 148-49.) Following these complaints, Plaintiff alleges, Maluf and Austin "continued to harass and discriminate against" her from February 2016 to June 2016, and they "sought to bring her up on disciplinary charges after she reported Austin to her union representative and DOITT management."  (<u>Id.</u> ¶¶ 150-51.)

Plaintiff complained to Kirks about the alleged discrimination, retaliation and instruction to hide documents from DOI on June 22, 2016, and, perceiving that he was complicit in the concealment of documents from DOI and that he took no action to address her complaints, she resigned from the DoITT on June 28, 2016, allegedly "not only to avoid any possible implication in [Kirks'] scheme to hide documents from the DOI," but also "to preserve her health," which allegedly declined over the course of her DoITT employment, and because she

believed "her health would continue to deteriorate" working with Austin and Maluf. (Id. ¶¶ 6, 86, 157.) Plaintiff alleges that, following her resignation and receipt of a full allocation of unemployment insurance ("UI") benefits, the Defendants sought to challenge her collection of UI benefits retroactively and that the named individual defendants each attended her UI hearing "for the sole purpose of intimidating Plaintiff and as a further act of harassment." (Id. ¶¶ 7, 88-92).

On July 5, 2016, Plaintiff filed a charge of discrimination with the EEOC, and on or about July 25, 2016, the EEOC issued a Notice of Right to Sue. (Id. ¶ 15.)


<u>DISCUSSION</u>

Defendants move, pursuant to Federal Rule of Civil Procedure 12(b)(6), to dismiss Plaintiff's Amended Complaint in its entirety for failure to state a claim upon which relief can be granted. (See Docket Entry No. 41.) In determining whether a plaintiff has set forth the "short and plain statement of the claim showing that [she is] entitled to relief" required by the Federal Rules (see Fed. R. Civ. P. 8(a)(2)), the Court looks to whether the allegations in the complaint establish the "facial plausibility" of the plaintiff's claims. Ashcroft v. Iqbal, 556 U.S. 662, 678-78 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007)). Such a showing "must be enough to raise a right to relief above the speculative level," requiring "more than labels and conclusions, [or] a formulaic recitation of the elements of a cause of action." Twombly, 550 U.S. at 555 (internal quotation marks omitted). In deciding a Rule 12(b)(6) motion to dismiss, the Court assumes the truth of the facts asserted in the

complaint and draws all reasonable inferences from those facts in favor of the plaintiff.  See

Harris v. Mills, 572 F.3d 66, 71 (2d Cir. 2009) (citation omitted).


Title VII and Equal Protection Claims (First, Second, Third, Fourth, and Sixth Claims for Relief)

Title VII provides, in relevant part, that "[i]t shall be an unlawful employment

practice for an employer . . . to fail or refuse to hire or to discharge any individual, or otherwise

to discriminate against any individual with respect to his [or her] compensation, terms,

conditions, or privileges of employment, because of such individual's race, color, . . . or national

origin."  42 U.S.C.S. § 2000e-2(a) (LexisNexis 2012).


*Sexual Harassment and Hostile Work Environment Claims (First Claim for Relief)*

In her First Claim for Relief, Plaintiff alleges that she experienced sexual

harassment and a hostile work environment because she is a woman and African-American, in

violation of Title VII, 42 U.S.C. § 1981, the NYSHRL, and the NYCHRL.  (Am. Compl. ¶¶ 158-

70.)  Defendants contend that these claims should be dismissed, arguing that Plaintiff has failed

to state a sexual harassment claim because she does not allege that Defendants' conduct was

based on Plaintiff's sex, and that Plaintiff has not pled facts that give rise to a plausible inference

that the alleged conduct of Maluf and Austin created a hostile work environment.  (Defendants'

Memorandum of Law in Support of their Motion to Dismiss the Amended Complaint ("Def.

Opening Br."), Docket Entry No. 42, at 9-15.)

Title VII recognizes two forms of sexual harassment: direct discrimination (or

"quid pro quo") and "hostile workplace environment."  Leibovitz v. N.Y.C. Transit Auth., 252

F.3d 179, 188 (2d Cir. 2001).  "In addition to pleading abusive or offensive conduct, 'it is

axiomatic that a plaintiff must demonstrate that the conduct occurred because of her protected characteristic.'" Bliss v. MXK Rest. Corp., 220 F. Supp. 3d 419, 423 (S.D.N.Y. 2016) (quoting Alfano v. Costello, 294 F.3d 365, 374 (2d Cir. 2002)) (ellipses and internal brackets omitted).

Plaintiff asserts a claim of sexual harassment in her First Claim for Relief, and alleges that she made complaints of sexual harassment, but she does not allege any facts to support an inference of "quid pro quo" direct harassment, nor does she allege any facts to suggest she experienced unwelcome sexual advances, requests for sexual favors, or other verbal or physical harassment of a sexual nature or on the basis of her sex. Although Plaintiff alleges she experienced "unwelcome touching" by Maluf, including touching and rubbing her arms, patting her leg, resting her arm on her back, and grabbing her hands and legs (see Am. Compl. ¶ 63), she does not plead facts sufficient to support an inference that this touching occurred "because of her" sex. Indeed, Plaintiff alleges that she was informed by colleagues that Maluf "regularly touched others the same way." (Am. Compl. ¶ 67.) Plaintiff does not allege that Maluf only touched female coworkers, or specifically targeted female coworkers to the exclusion of men. (See generally id.) For these reasons, Plaintiff's allegation that she experienced sexual harassment and hostile work environment on the basis of gender fails to state a claim for relief, see Bliss, 220 F. Supp. 3d at 423. The Defendants' motion to dismiss the First Claim for Relief is granted to the extent that claim is premised on sexually-motivated conduct.

The Court next considers Plaintiff's claim that she experienced a hostile work environment on the basis of race. "To establish a hostile work environment under Title VII, . . . a plaintiff must show that the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment[,] and "[t]he incidents complained of

must be more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive." Littlejohn v. City of New York, 795 F.3d 297, 320-21 (2d Cir. 2015) (quotation marks and citations omitted). To "determin[e] whether a plaintiff suffered a hostile work environment," a court "consider[s] the totality of the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Id. at 321 (quotation marks and citation omitted). "This standard has both objective and subjective components: the conduct complained of must be severe or pervasive enough that a reasonable person would find it hostile or abusive, and the victim must subjectively perceive the work environment to be abusive." Id. Courts have held that allegations of excessive scrutiny are not sufficient to establish a hostile work environment. See Nugent v. St. Lukes-Roosevelt Hosp. Ctr., 303 F. App'x 943, 945 (2d Cir. 2008); Trachtenberg v. Dep't of Educ., 937 F. Supp. 2d 460, 472-73 (S.D.N.Y. 2013). Reprimands for disobeying workplace conduct policy are also insufficient to establish a hostile work environment. See Chukwuka v. City of New York, 513 F. App'x 34, 36 (2d Cir. 2013).

Plaintiff fails to plead facts to support a plausible inference of a hostile work environment on the basis of race. The incidents she complains of, including being briefly marked "AWOL" when working as a volunteer in connection with the Pope's appearance, heightened scrutiny of her work, being yelled at and being chastised for completing her work ahead of schedule (see Am. Compl. ¶¶ 71-84), are not "sufficiently severe or pervasive to alter the conditions of [her] employment," and thus are insufficient to support an allegation of a hostile work environment. See Littlejohn, 795 F.3d at 320-21 (holding that negative statements, impatience, use of harsh tones, reprimands, supervisor distancing self from and excluding

plaintiff from meetings were insufficient to support a finding of a hostile work environment); Nugent, 303 F. App'x at 945 (concluding that conduct including "derogatory language used by [a supervisor], dismissive comments by management regarding [that supervisor's] behavior, [the supervisor's] 'attempts to create a paper trail,' and his intense scrutiny of [the plaintiff]" is "insufficiently severe and pervasive under" the hostile work environment standard); Trachtenberg, 937 F. Supp. 2d at 472-73 (concluding that a plaintiff retired teacher's allegations of being "subjected to excessive scrutiny" and "refused training opportunities," among other conduct, fell "well short of the sort of conduct that courts have found 'sufficiently pervasive to alter the conditions of [her] employment'"). Finally, Plaintiff's allegations about the Defendants' retroactive attempts to challenge her receipt of UI benefits by attending her UI hearing (see Am. Compl. ¶¶ 7, 88-92), are not properly considered in a hostile work environment analysis because she no longer worked at DoITT at that time. See Littlejohn, 795 F.3d at 320-21.

Plaintiff's reliance on Toombs v. N.Y.C. Housing Auth., No. 16-CV-3352-LTS, 2017 WL 1169649, at *4–5 (S.D.N.Y. Mar. 27, 2017), in support of the sufficiency of her hostile work environment claim is misplaced. (See Memorandum of Law in Opposition to Defendants' Motion to Dismiss ("Pl. Br."), Docket Entry No. 47, at 20-21.) In Toombs, allegations that a supervisor of Hispanic heritage had stated at a staff meeting attended by the plaintiff, who was black, and twenty other employees – the vast majority of whom were black – that he wanted them "out of here so I can bring in my people," and subsequently replaced several black employees with Hispanic workers, and of "unfavorable treatment of Black workers in comparison to Hispanic workers, false disciplinary charges and counseling memoranda, and termination of several Black employees," were held sufficient plausibly to frame a race-based

hostile work environment claim. 2017 WL 1169649, at *1, *5. Here, Plaintiff's allegations of incidents do not plausibly raise an inference of sufficient severity or pervasiveness of the allegedly hostile conduct, nor does her allegation that she and others suspected that the differential treatment was race-based provide the factual basis necessary to support even a minimal inference of a causal connection. In Toombs, by contrast, the plaintiff attributed a comment that could plausibly be construed as race-based to a principal actor in the alleged workplace hostility.

Thus, Plaintiff has failed to state a claim for a hostile work environment under Title VII, and Defendants' motion is granted as to the federal claims in the First Claim for Relief.

*Race Discrimination and Equal Protection Clause Claims*
*(Second, Third, and Sixth Claims for Relief)*

Plaintiff alleges that she was treated differently from and paid less than her white coworkers and was discriminated against on the basis of her race, in violation of Title VII and 42 U.S.C. § 1981(a) and the Equal Protection Clause. (Am. Compl. ¶¶ 171-91.) Defendants assert that Plaintiff has failed to state a claim upon which relief can be granted because she has plead neither an adverse employment action nor a proper basis for an inference of discrimination. (Def. Opening Br., at 15-17, 15 n.2.)

Section 1981 provides, in pertinent part, that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts . . . and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens . . . ." 42 U.S.C.S. § 1981(a) (LexisNexis 2009). "[T]he term 'make and enforce contracts' includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms,

and conditions of the contractual relationship." 42 U.S.C.S. § 1981(b) (LexisNexis 2009).

Section 1981's protections apply to employment relationships. See Patterson v. Cty. of Oneida,

375 F.3d 206, 224 (2d Cir. 2004). However, "[w]hen the defendant is a state actor, Section 1983

is the exclusive remedy for violations of rights guaranteed under Section 1981 . . . [t]hus, claims

against . . . [i]ndividual [d]efendants in their official capacity or against the City, must be brought

under Section 1983." Bermudez v. City of New York, 783 F. Supp. 2d 560, 576 (S.D.N.Y.

2011) (citing Jett v. Dallas Indep. Sch. Dist., 491 U.S. 701 (1989)) (additional citations omitted).

To the extent the Individual Defendants are sued in their individual capacities, the claims involve

official action taken under color of state law and thus are also properly considered under Section

1983.

   In her motion papers, Plaintiff "consents to withdraw [her § 1981] claim against

the City[,] but maintains her § 1981 claims against the individually named Defendants." (Pl. Br.

at 3.) These claims, however, must be brought under Section 1983, and thus the Court will

dismiss her Section 1981 claims in their entirety and construe her discrimination claims against

Maluf, Kirks, and Austin, as Equal Protection Clause claims brought pursuant to Section 1983,

and her race-based disparate treatment claim against the City as one asserted under Section 1983

pursuant to the Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978), doctrine based on City

policies and customs.[1]

---

[1] In her Sixth Clam for Relief, Plaintiff alleges that the City is liable for Plaintiff's alleged
constitutional injuries under 42 U.S.C. §§ 1981 and 1983, pursuant to Monell. (Am.
Compl. ¶¶ 207-13.) To establish municipal liability under Monell, a plaintiff must allege
(1) the existence of a municipal policy or custom, and (2) a causal connection between
the policy and the alleged civil rights deprivation. Jones v. Westchester County Dept. of
Corrections, 557 F.Supp. 2d 408, 416-17 (S.D.N.Y. 2008). However, "[u]nless a plaintiff
shows that he has been the victim of a federal law tort committed by persons for whose
conduct the municipality can be responsible, there is no basis for holding the municipality
liable[;] Monell does not create a stand-alone cause of action under which a plaintiff may

"The Fourteenth Amendment provides public employees with the right to be 'free from discrimination.'"  Vega v. Hempstead Union Free Sch. Dist., 801 F.3d 72, 87 (2d Cir. 2015) (quoting Demoret v. Zegarelli, 451 F.3d 140, 149 (2d Cir. 2006)).  To sufficiently state a Section 1983 claim, "a plaintiff must allege two elements: (1) the violation of a right secured by the Constitution and laws of the United States, and [that] (2) the alleged deprivation was committed by a person acting under color of state law."  Id. at 87-88 (internal quotation marks and citations omitted).  "A state employee acting in his [or her] official capacity" meets the "acting 'under color of state law'" requirement."  Id. at 88 (quoting Feingold v. New York, 366 F.3d 138, 159 (2d Cir. 2004)).  "Once the color of law requirement is met, a plaintiff's equal protection claim parallels [her] Title VII claim, except that a § 1983 claim, unlike a Title VII claim, can be brought against an individual[,]" and "to survive . . . a motion to dismiss, a plaintiff must plausibly allege a claim under the same standards applicable to a Title VII claim."  Id. (quotation marks and citation omitted).

    To state a claim for discrimination, or disparate treatment, based on membership in a protected class under Title VII, "absent direct evidence of discrimination, what must be plausibly supported by facts alleged in the complaint is that the plaintiff is a member of a protected class, was qualified, suffered an adverse employment action, and has at least minimal support for the proposition that the employer was motivated by discriminatory intent."  Littlejohn, 795 F.3d at 311.  An "adverse employment action" is a "materially adverse change in

---

sue over a governmental policy, regardless of whether he suffered the infliction of a tort resulting from the policy."  Askins v. Doe No. 1, 727 F.3d 248, 253 (2d Cir. 2013).  If a plaintiff fails to allege plausibly that municipal employees violated his or her constitutional rights, the plaintiff's Monell claim "necessarily fails as well" as against the municipal entity.  Kajoshaj v. New York City Dep't of Educ., 543 F. App'x 11, 16-17 (2d Cir. 2013).

the terms and conditions of employment[,]" and "[t]o be materially adverse, a change in working conditions must be more disruptive than a mere inconvenience or an alteration of job responsibilities." <u>Sanders v. N.Y. City Human Res. Admin.</u>, 361 F.3d 749, 755 (2d Cir. 2004) (internal quotation marks and citations omitted). "Examples of such a change include termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices unique to a particular situation." <u>Id.</u> (internal quotation marks, ellipses, and citation omitted). "Although 'an employment discrimination plaintiff need not plead a <u>prima facie</u> case of discrimination' in order to survive a motion to dismiss," a plaintiff "must allege sufficient facts showing that she is entitled to relief." <u>Bermudez</u>, 783 F. Supp. 2d at 575 (quoting <u>Swierkiewicz v. Sorema N. A.</u>, 534 U.S. 506, 515 (2002)) (other citations omitted).

Here, Plaintiff does not plead facts showing that she suffered an adverse employment action. Plaintiff's own characterizations of her "alleged adverse employment action" – that her supervisors treated her white colleagues better and with less hostility, acknowledging them at meetings, and "not yell[ing] at [them] for asking the same questions as Plaintiff" (Pl. Br. at 18) – fail to rise to the legally cognizable level set forth in <u>Sanders</u>. <u>See</u> 361 F.3d at 755. Plaintiff's conclusory allegations that she was denied training opportunities essential to her job are insufficient to demonstrate that she suffered an adverse employment action (<u>see</u> Am. Compl. ¶¶ 95, 100, 130), because Plaintiff has not alleged facts sufficient to support an inference that the alleged lack of training had a material impact, such as a significant diminution of material responsibilities, or denial of promotional opportunities or pay increases. <u>See</u> <u>Sanders</u>, 361 F.3d at 755.

Although Plaintiff does allege generally that she was denied overtime while white and male colleagues were allowed overtime (see Am. Compl. ¶¶ 102-04, 107, 121, 123, 130, 134-35, 177, 187; see also Pl. Br. at 18), Plaintiff does not identify a single specific incident in which she was denied overtime. Rather, she pleads that she was generally denied the opportunity to work overtime without advance approval, that her shift was changed in November 2015 to one that did not allow overtime, and that the DoITT refused to pay her overtime on occasions she had to work beyond normal hours. (See Am. Compl. ¶¶ 102-04, 107, 121, 123, 130, 134-35, 177, 187. These generalized allegations are not sufficient to "enough to raise a right to relief above the speculative level" by demonstrating that she suffered a "material loss of benefits" constituting an adverse employment action. See Twombly, 550 U.S. at 555; Bermudez, 783 F. Supp. 2d at 575.

Plaintiff also fails to plead facts sufficient to support plausibly an inference that her June 28, 2016, resignation, due to "ethical violations she identified" in her department and "her health," was the product of a "constructive discharge," and thus was an adverse employment action. (See Am. Compl. ¶¶ 69, 76-77, 86, 157; Pl. Br. at 14-16.) "'Constructive discharge of an employee occurs when an employer, rather than directly discharging an individual, intentionally creates an intolerable work atmosphere that forces an employee to quit involuntarily. Working conditions are intolerable if they are so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign.'" Theilig v. United Tech Corp., 415 F. App'x 331, 334 (2d Cir. 2011) (quoting Chertkova v. Conn. Gen. Life Ins. Co., 92 F.3d 81, 89 (2d Cir. 1996) and citing Terry v. Ashcroft, 336 F.3d 128, 151-52 (2d Cir. 2003)). Allegations that simply suggest difficulty or unpleasantness, or the employee's dissatisfaction with working conditions, are insufficient to frame a claim for constructive discharge. See De La Peña v.

<u>Metro. Life Ins. Co.</u>, 953 F. Supp. 2d 393, 419 (E.D.N.Y. 2013) (dismissing complaint for failure to plead an intolerable workplace).

Plaintiff fails to plead facts to support an inference that Defendants' "ethical violations" and effects on Plaintiff's health "intentionally create[d] an intolerable work atmosphere," thereby forcing Plaintiff to quit. <u>See</u> <u>Theilig</u>, 415 F. App'x at 334; <u>see also</u> Am. Compl. ¶ 86. Plaintiff's allegations about the unpleasant manner in which she was treated by Defendants, including being "yelled at" and "humiliated" as well as having her schedule changed, requiring her to work through her lunch hour notwithstanding medical issues, are insufficient to support a claim for constructive discharge because they do not support the inference that her working conditions were so "intolerable" that "they [were] so difficult or unpleasant that a reasonable person . . . would have felt compelled to resign," <u>i.e.</u>, that she was constructively discharged and therefore suffered an adverse employment action. <u>See</u> <u>Theilig</u>, 415 F. App'x at 334. Her distress regarding the instruction that she understood as an effort to hide information from investigators and her personal health issues, similarly, are insufficient to demonstrate objectively an intentionally-created intolerable working atmosphere.

As Plaintiff fails to plausibly allege a Title VII claim against the City, she thus fails to plausibly allege a Section 1983 claim for discrimination in violation of the Equal Protection Clause against that Defendant. <u>See</u> <u>Vega</u>, 801 F.3d at 87-88. The Court's Title VII analysis above also applies to the Individual Defendants, and thus Plaintiff has failed to plausibly allege a Section 1983 claim against them.

For the foregoing reasons, Plaintiff has failed to state a claim for discrimination based on race under Title VII and Section 1983. Defendants' motion to dismiss the Second and Third Claims for Relief as to the federal claims is thus granted. In light of the Court's

determination that Plaintiff has failed to plead a constitutional violation, which is a necessary prerequisite of a claim for municipal liability under Monell, the Court also grants Defendants' motion to dismiss the Sixth Claim for Relief.

*Title VII Retaliation Claim (Fourth Claim for Relief)*

Plaintiff alleges that she engaged in protected activities by lodging various complaints of discrimination against Maluf and Austin with the agency's Equal Employment Opportunity Office, the EEOC, and internal management, and that she was subsequently retaliated against, in violation of Title VII and 42 U.S.C. Sections 1981 and 1983. (Am. Compl. ¶¶ 192-98.) Defendants argue that Plaintiff fails to state a retaliation claim "because she has not alleged a material adverse action or a causal connection between the alleged protected activity and the allegedly adverse employment action." (Def. Opening Br. at 18.)

Title VII prohibits discrimination by an employer against an employee "because [she] has opposed any practice made an unlawful employment practice by [Title VII], or because [she] has made a charge . . . under [Title VII]." 42 U.S.C.S. § 2000e-3(a) (LexisNexis 2014). "For a retaliation claim to survive a . . . motion to dismiss, the plaintiff must plausibly allege that: (1) defendants discriminated—or took an adverse employment action—against [her], (2) 'because' [she] has opposed any unlawful employment action." Vega, 801 F.3d at 90 (internal quotation marks omitted) (quoting 42 U.S.C. § 2000e-3(a)).

"[I]f an employee . . . is critical about the discriminatory employment practices of her employer, that employee has engaged in a protected activity under [Title VII's retaliation] opposition clause." Littlejohn, 795 F.3d at 318 (quotation marks and citation omitted). "[F]or a retaliation claim under § 1983 to survive a . . . motion to dismiss, the plaintiff must plausibly

allege that: (1) defendants acted under the color of state law, (2) defendants took adverse employment action against [her], (3) because [s]he complained of or otherwise opposed discrimination." <u>Vega</u>, 801 F.3d at 91.

The "adverse employment action" standard in the context of a Title VII retaliation claim "covers a broader range of conduct than does the adverse-action standard for claims of discrimination under Title VII" and "is not limited to discriminatory actions that affect the terms and conditions of employment." <u>Vega</u>, 801 F.3d at 90. An adverse employment action for the purposes of a Title VII retaliation claim is one which might have dissuaded a reasonable worker from engaging in protected activity. <u>See</u> <u>Kessler v. Westchester County Dept. of Soc. Servs.</u>, 461 F.3d 199, 207-09 (2d Cir. 2006). Petty slights, minor annoyances, personality conflicts, the sporadic use of abusive language, or simple lack of good manners do not rise to the level of actionable conduct in a Title VII retaliation claim. <u>Burlington Northern and Santa Fe Ry. Co. v. White</u>, 548 U.S. 53, 68 (2006).

"[A] plaintiff must [also] plausibly plead a connection between the act and [her] engagement in protected activity." <u>Vega</u>, 801 F.3d at 90 (citations omitted). "A retaliatory purpose can be shown indirectly by timing: protected activity followed closely in time by adverse employment action." <u>Id.</u> (citations omitted). "[F]or an adverse retaliatory action to be 'because' a plaintiff made a charge, the plaintiff must plausibly allege that the retaliation was a 'but-for' cause of the employer's adverse action." <u>Id.</u>

Plaintiff alleges that she made three complaints to the EEOC, in January 2016, April 2016, and July 2016, as well as an internal EEO complaint with the DoITT's EEOO

"around" April 2016.[2]  (Am. Compl. ¶¶ 15, 125, 127-28.)  Defendants do not contest that these actions constituted "protected activity" for the purposes of a retaliation analysis.  Plaintiff also pleads that she lodged the following complaints about alleged "discriminatory employment practices": (1) in or about September 2015, she complained about sexual harassment to Maluf and agency staff; and (2) on June 22, 2016, she complained to Kirks about the alleged violations of her civil rights and of the City's Equal Employment Opportunity policy.  (Am. Compl. ¶¶ 5, 119, 131.)  These alleged complaints also constitute "protected activities" for purposes of a Title VII analysis, as Plaintiff was "critical about the discriminatory employment practices of" the DoITT.  See Littlejohn, 795 F.3d at 318.

Plaintiff fails, however, to plead facts sufficient to support a plausible inference that she suffered an adverse employment action.  She alleges that, following her complaints, she: had her shift changed to one that did not permit requesting overtime in or around November 2015; was "yelled at" and humiliated in meetings; was heavily scrutinized by supervisors; threatened with conduct violations; was forced to "work outside of her work hours without compensation" at an unspecified time; was denied training opportunities; was denied "overtime [at unspecified times] even when she needed to work beyond her scheduled work day to accommodate vendors;" and "[i]n several instances, . . . was required to . . . work before her scheduled shift" and her overtime requests were subsequently denied.[3]  (See Am. Compl. ¶¶ 70-71, 79-80, 110, 113-116, 119-34.)  Plaintiff's allegations describe petty slights and minor

---

[2]     Plaintiff also asserts that her complaints to Maluf "about unwanted touchings" also constitute "protected activity" for purposes of a Title VII retaliation analysis.  (See Pl. Br. at 16.)

[3]     For substantially the reasons set forth above in connection with Plaintiff's discriminatory treatment claims, Plaintiff's constructive discharge allegation is also insufficient to frame an adverse employment action in the retaliation context.

annoyances, and do not depict adverse actions sufficient to support a viable retaliation claim. See Burlington Northern, 548 U.S. at 68 (stating that the standard is objective and a plaintiff must show that a reasonable employee would have found the conduct materially adverse, and that ordinary workplace tribulations such as sporadic abusive language and petty slights will not suffice).

Plaintiff alleges that her overtime requests were denied "in several instances," but she fails to allege any specifics about the magnitude or frequency of the requests and subsequent denials, including, most crucially, when these allegations occurred in relation to her complaints. (See Am. Compl. ¶¶ 100, 103, 130, 133-34.) Without such factual allegations, the Court cannot determine that there is a sufficient basis for an inference that such denials were retaliatory and "might have dissuaded a reasonable worker from" engaging in protected activity. See Kessler, 461 F.3d at 207-09.

Plaintiff has thus failed to allege plausibly that she suffered an adverse employment action. Her Title VII and Section 1983 retaliation claims must therefore be dismissed. See Vega, 801 F.3d at 90-91.

Plaintiff also fails to plead the requisite causal connection between her alleged protected activities and the alleged actions she suffered in retaliation, as she has not "plausibly allege[d] that the retaliation was a 'but-for' cause of" an adverse action taken by Defendants. See Vega, 801 F.3d at 90. Plaintiff, in identifying alleged "adverse actions," often attributes the same instances of conduct to both racial discrimination and to retaliation for engaging in "protected activities." Taking Plaintiff's allegations as true, as the Court must do at this stage of the proceedings, Plaintiff has not "plausibly allege[d] that the retaliation was a 'but-for' cause of" these actions. See id.

Therefore, Plaintiff has failed to state a claim for retaliation under Title VII and Sections 1981 and 1983.

First Amendment Retaliation (Fifth Cause of Action)

Plaintiff alleges that Defendants violated her First Amendment rights by retaliating against her for complaining about a matter of public concern, namely that Austin had instructed staff to hide certain documents from the DOI in the midst of an alleged mismanagement scandal at the ECTP, on two occasions: to her union representative and DoITT's Labor Relations office on January 15, 2016, and to Kirks on June 22, 2016.  (See Am. Compl. ¶¶ 148, 152-53, 199-206.)  Defendants assert that Plaintiff has "fail[ed] to sufficiently allege either an adverse employment action or a causal connection," as her retaliation claims principally concern claims regarding never-brought disciplinary charges, work scrutiny, and denied overtime.  (See Def. Opening Br. at 20-22.)

A plaintiff "asserting a First Amendment retaliation claim must" plausibly allege facts to support an inference "that: (1) [her] speech or conduct was protected by the First Amendment; (2) the defendant took an adverse action against [her]; and (3) there was a causal connection between this adverse action and the protected speech."  See Matthews v. City of New York, 779 F.3d 167, 172 (2d Cir. 2015) (citation and quotation marks omitted); Stajic v. City of N.Y., 214 F. Supp. 3d 230, 235 (S.D.N.Y. 2016).  Defendants here do not dispute that Plaintiff's alleged speech was "protected activity" for purposes of a First Amendment inquiry.  (See Def. Opening Br. at 20-22.)

With respect to the adverse employment action prong of the inquiry, the Second Circuit has held that "[i]n the context of a First Amendment retaliation claim, . . . 'only

retaliatory conduct that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights constitutes an adverse action.'" <u>Zelnik v. Fashion Institute of Technology</u>, 464 F.3d 217, 225 (2d Cir. 2015) (quoting <u>Washington v. County of Rockland</u>, 373 F.3d 310, 320 (2d Cir. 2004)) (brackets omitted).  "In this context, 'adverse employment actions include discharge, refusal to hire, refusal to promote, demotion, reduction in pay, and reprimand.' . . .  This list of retaliatory conduct is certainly not exhaustive, however, and 'lesser actions may also be considered adverse employment actions.'" <u>Zelnik</u>, 464 F.3d at 226 (quoting <u>Morris v. Lindau</u>, 196 F.3d 102, 110 (2d Cir. 1999)) (brackets omitted).  For example, "'[a]dverse employment actions may include negative evaluation letters" or "express accusations of lying.'"  <u>See</u> <u>id.</u>

        Plaintiff alleges that, on or about January 15, 2016, she complained to her union representative and DoITT Labor Relations management about a December 7, 2015, meeting in which she was allegedly instructed to hide information relevant to an ongoing DOI investigation into the ECTP.  (<u>See</u> Am. Compl. ¶¶ 146-48.)  Following those complaints, Maluf and Austin allegedly "continued to harass and discriminate against Plaintiff" and "sought to bring her up on disciplinary charges," and Austin "continue[d] to scrutinize [Plaintiff's] work and . . . to insist that she work beyond her shift without compensation."  (<u>Id.</u> ¶¶ 150-51, 156.)  As explained above, these types of actions, alleged in conclusory and generalized terms, are insufficient to frame viable causes of action for discrimination and retaliation for complaints of discrimination. They are similarly insufficient to demonstrate the types of conduct recognized by the <u>Zelnik</u> court as "retaliatory conduct that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights."  <u>See</u> <u>Zelnik</u>, 464 F.3d at 225 (quotations omitted).  For reasons similar to those discussed above in connection with Plaintiff's Title VII

retaliation claim, her supervisors' alleged "yelling" and humiliation of her in meetings and heightened scrutiny, though perhaps unpleasant, do not plausibly support an inference of the requisite level of "retaliatory conduct."  <u>See</u> <u>id.</u>  Nor do contemplated disciplinary charges that were never lodged.  <u>See</u> <u>id.</u>  Also for the reasons discussed above, Plaintiff has failed to frame plausibly a "constructive discharge" claim or provide the requisite specificity for the denial of overtime pay to constitute a "reduction in pay."  <u>See</u> <u>id.</u>  Any inference of causation is, furthermore, necessarily weak, in that Plaintiff frames the allegedly retaliatory conduct as a continuation of a pre-existing pattern.  (<u>See</u> Am. Compl. ¶¶ 150, 156.)

Plaintiff has thus failed to state a claim for First Amendment retaliation, and Defendants' motion is granted as to the Fifth Claim for Relief.

<u>The NYSHRL and NYCHRL Claims</u>

Because Plaintiff has failed to state viable federal discrimination, retaliation, and First Amendment claims, the Court declines to exercise supplemental jurisdiction of Plaintiff's state law claims, pursuant to 28 U.S.C. § 1367(c).  <u>See</u> <u>Lerner v. Fleet Bank, N.A.</u>, 318 F.3d 113, 130 (2d Cir. 2003) ("In most circumstances, a district court should decline supplemental jurisdiction if all federal claims have been dismissed at the pleading stage.").

<span style="text-align:center">CONCLUSION</span>

For the foregoing reasons, Defendant's motion to dismiss the Amended Complaint is granted, Plaintiff's federal claims are dismissed, and the Court declines to exercise supplemental jurisdiction of the state law claims.

The Clerk of the Court is hereby directed to enter judgment accordingly and close the case.

This order resolves Docket Entry No. 41.

SO ORDERED.

Dated: New York, New York
June 14, 2018

 /s/ Laura Taylor Swain
LAURA TAYLOR SWAIN
United States District Judge