UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ROBIN COLLYMORE,

PLAINTIFF,

-against-

CITY OF NEW YORK; MATTHEW AUSTIN;
DAVID KIRKS; and LISA MALUF
 (in their official capacities and as aiders and abettors)

DEFENDANTS.

**MEMORANDUM OF LAW IN OPPOSITION OF DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT
(Request for Oral Argument)**

*Duly Submitted by:*
                                        Special Hagan, Esq.
                                        **LAW OFFICES OF SPECIAL HAGAN, ESQ.**
                                        **88-08 Justice Avenue Apt. 16i**
                                        **Elmhurst, New York 11373**

# TABLE OF CONTENTS

|  | Pages |
|---|---|
| TABLE OF AUTHORITIES | |
| I) PRELIMINARY STATEMENT | 1-2 |
| III) STATEMENT OF FACTS | 2-8 |
| IV) ARGUMENT | 8-24 |
| POINT I:<br>DEFENDANTS' MOTION FOR SUMMARY JUDGMENT<br>MUST BE DENIED IN ITS ENTIRETY | 8-9 |
| POINT II: PLAINTIFF'S RETALIATION CLAIMS<br>UNDER TITLE VII, 1983, NYSHRL AND NYCHRL<br>SHOULD NOT BE DISMISSED | 9-17 |
| POINT III: PLAINTIFF'S GENDER DISCRIMINATION AND SEXUAL HARASSMENT<br>CLAIMS UNDER THE NYSHRL AND NYCHRL SHOULD NOT BE DISMISSED | 17-21 |
| POINT IV:   PLAINTIFF'S DISCRIMINATION CLAIMS<br>UNDER THE NYSHRL AND NYCHRL SHOULD NOT BE DISMISSED | 21-23 |
| POINT V:    PLAINTIFF'S CLAIMS OF AIDING AND ABETTING<br>SHOULD NOT BE DISMISSED<br>UNDER THE NYSHRL AND NYCHRL SHOULD NOT BE DISMISSED | 23 |
| V. CONCLUSION | 24 |

**TABLE OF AUTHORITIES**

|  | Pages |
|---|---|
| Alvarado v. Nordstrom Inc.,  685 F. App'x 4 (2d Cir. 2017) | 19 |
| Annunziata v. IBEW Local Union, #363, 15-CV-03363(NSR), U.S. Dist. LEXIS 89234  (S.D.N.Y.  May 29, 2018) | 23 |
| Bermudez v. City of New York, 10-CV-1162(ALC), 2015 U.S. Dist. LEXIS 43257 (S.D.N.Y. March 31, 2015) | 19 |
| Brightman v. Prison Health Serv., Inc.,  108 A.D. 3d 739 (2d Dept. 2013) | 16 |
| Carlton v. Mystic Transp., Inc., 202 F.3d 129 (2d Cir. 2000) | 8 |
| Celotex Corp. v. Catrett, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed 265 (1986) | 7 |
| Chaloult v. Interstate Brands Corp., 02 Civ. 02-249-P-C, 2003 U.S. Dist. LEXIS 1360 (M.E> Aug. 6, 2003) | 20 |
| Chambers v. TRM Copy Ctrs. Corp., 43 F. 3d 29 (2d Cir. 1994) | 9 |
| Colon v. New York City Hous. Auth., 16-CV-4540(VSB), 2021 U.S. Dist. LEXIS 10061 (S.D.N.Y. May 26, 2021 | 17, 23 |
| Cortes v. MTA New York City Transit, 802 F.3d 226 (2d Cir. 2015 | 8 |
| De Sio v. Singh, 19 Civ. 3954 (JCM), 2021 U.S. Dist. LEXIS 185740 (S.D.N.Y. Sept. 28, 2021) | 23 |

| | |
|---|---|
| Desir v. City of New York, 453 F. App'x . 30 (2d Cir. 2011) | 9 |
| Dodd v. City of N.Y., 489 F. Supp. 219 (S.D.N.Y. Sept. 25, 2020) | 14, 16 |
| Doran v. New York State Dep't of Health Office of the Medicaid Inspector Gen., 15 CV 7217 (PKC), 2019 U.S. Dist. LEXIS 166830 (S.D.N.Y. Sept. 27, 2019) | 21 |
| Feingold v. New York, 366 F3d 138 (2d Cir. 2004) | 23 |
| Fincher v. Depository Trust and Clearing Corp., 604 F.3d 712 (2d Cir. 2010) | 8 |
| Fisher v. Vassar Coll., 114 F.3d 1332 (2d Cir. 1997) | 9 |
| Gallagher v. Delaney, 139 F.3d 338, 342 (2d Cir. 1998) | 18 |
| Gallo v. Prudential Residential Servs., Ltd. P'ship, 22 F.3d 1219 (2d Cir. 1994) | 7, 9 |
| Gordon v. N.Y.C. Bd. of Educ., 232 F3d 111 (2d Cir. 2000) | 17 |
| Green v. New York City Transit Auth., 15 CV 8204(ALC), 2020 U.S. Dist. LEXIS 172519 (S.D.N.Y. Sept. 21, 2020) | 8 |
| Gregory v. Daly, 243 F.3d 687 (2d Cir. 2001) | 14 |
| Harris v. Forklift Sys., Inc., 510 U.S. 17, 114 S. Ct. 367, 126 L.Ed. 2d 295 (1993) | 18 |
| Hicks v. Baines, 593 F.3d 159 (2d Cir. 2010) | 13 |

| | |
|---|---|
| Hornig v. Trs. Of Colum. Univ.,<br>17 Civ. 3602(ER), 2022 U.S. Dist. LEXIS 60683 (S.D.N.Y. March 31, 2022) | 8, 9, 13, 15, 16 and 19 |
| Johnson v. City of New York, 16 CV 6426(KAM)(VMS),<br>2021 U.S. Dist. LEXIS 61908 (E.D.N.Y. March 30, 2021) | 14 |
| Kapmier v. Emeritus Corporation,<br>472 F.3d 930, 940-41  (7th Cir. 2009) | 20 |
| Kenney v. New York City Dep't of Educ., No. 06 Civ. 577-.<br>2007 U.S. Dist. LEXIS 77926 (S.D.N.Y. Oct. 27, 2007) | 8 |
| Malena v. Victoria's Secret District, LLC,<br>886 F.Supp. 2d 349 (S.D.N.Y. 2012) | 17 |
| Mihalik Credit Agricole Cheuvreux N. Am., Inc.,<br>715 F3d 102 (2d Cir. 2013) | 16, 17 and 21 |
| Mormol v. Costco Wholesale Corp.,<br>364 F.3d 54 (2d Cir. 2004) | 14 |
| Oncale v. Sundowner Offshore Servs., Inc.,<br>523 U.S. 75, 118 S. Ct. 998, 140 L.Ed 2d 201 (1998) | 18 |
| Pistello v. Bd. of Educ. of the Canstota Cent. Sch. Dist.,<br>808 Fed Appx. 19 (2d Cir. April 10, 2020) | 10 and 13 |
| Pugni v. Reader's Digest Ass'n, 05 Civ. 8026(CM),<br>2007 U.S. Dist. LEXIS 26284 (S.D.N.Y. April 9, 2007) | 18 |
| Richardson v. New York State Dep't of Correctional Serv.,<br>1580 F.3d 426 (2d Cir. 1999) | |

| | |
|---|---|
| Salerno v. City Univ. of New York, No. 99-CV-11151, 2003 WL 22170609 (S.D.N.Y. Sept. 18, 2003) | |
| Schaper v. Bronx Lab. Hosp. Ctr., 408 F. Supp. 3d 379 (S.D.N.Y. Sept. 30, 2019) | 8 |
| Sooroojbailie v. Port Auth. of N.Y. & N.J., 816 Fed. Appx. 536 (2d Cir. June 4, 2020) | 15 and 17 |
| Stathatos v. Galla Res. LLC, 06 Civ. 13138, 2010 U.S Dist. LEXIS 50511, 2010 WL 2024967 (S.D.N.Y. May 21, 2010) | 23 |
| Treglia v. Town of Manelus, 313 F. 713 (2d Cir. 2002) | 10 |
| Vega v. Hempstead Union Free Sch. Dist., 801 F.3d 72 (2d Cir. 2015) | 10 |
| Zann Kwan v. Andalex Grp., LLC, 737 F.3d 834 (2d Cir. 2013) | 13 |

**PRELIMINARY STATEMENT**

Plaintiff, Robin Collymore  ("Ms. Collymore"), submits this Memorandum of Law in opposition to the motion for summary judgment filed by Defendants:  City of New York ("City"); Matthew Austin ("Austin"); David Kirks ("Kirks"); and Lisa Maluf ("Maluf")  (collectively defendants").  Plaintiff brought this action to remedy defendants' unlawful employment practices:  Sexual harassment under Title VII, 42 U.S.C. § 1981 (1981), and 42 U.S.C. § 1983 (1983), New York State Human Rights Law (NYSHRL), and the City Human Rights Law (CHRL); Gender discrimination under Title VII, 1981, 1983, NYSHRL and CHRL; Race discrimination under Title VII, 1981, 1983, NYSHRL and CHRL; Race Discrimination under the 14th Amendment of the Equal Protection Clause; Retaliation under Title VII, 1981, 1983, NYSHRL and CHRL; Retaliation under the First Amendment of the United States Constitution; aiding, abetting and inciting under the NYSHRL and NYCHRL.[1]

Defendants filed a Motion to Dismiss Plaintiff's Amended Complaint was filed on August 21, 2017. On April 11, 2019 the Second Circuit Court of Appeals issued a Summary Order that affirmed in part, vacated in part and remanded the matter herein for further proceedings.

The Second Circuit held that Plaintiff plausibly pled facts sufficient to establish that she had experienced retaliation under Title VII and § 1983.   The Court of Appeals also determined that the District Court erred when it failed to exercise supplemental jurisdiction over Plaintiff's state and local law claims.  Accordingly, the following causes of action under the state and city law remain viable: Plaintiff's claims of sexual harassment and hostile work environment; Plaintiff's claims of race and gender discrimination; Plaintiff's claims of retaliation; and Plaintiff's claims of aiding, abetting and inciting  .

---

[1] Plaintiff withdrew her claims under § 1981 on appeal.

Plaintiff respectfully submits that Defendants' application for summary judgment must be denied in its entirety. Defendants' application omits at least three instances of Plaintiff's protected activities; omits contradictory record evidence surrounding Ms. Collymore's performance and alleged attendance issues; fails to mention Defendants' denial of over time, the removal of Plaintiff's job functions and subject matter expert;  and misapplies the law.

## STATEMENT OF FACTS

### A.  An Introduction to DoITT: An Agency Under Scrutiny for Corruption and Discriminatory Hiring Practices

When Ms. Collymore was hired, DoITT was being audited by at least two other City agencies.  In or around 2014, former Mayor Bill DeBlasio requested that the Department of Investigation (DOI)  investigate DoITT's Emergency Communications Transformation Program's (ECTP) administration of monies used to "modernize" the City's 911 system.  Also in or around that time, DOITT was also being audited by the Equal Employment Practices Commission (EEPC).  **(Exhibit 1: DOI Investigatory Report; and Exhibit 2:  EEPC Audit of DoITT)**

The EEPC audits City agencies to determine their compliance with the City's civil rights laws and hiring practices. Their audits are comprehensive and include the procurement of compliance when underutilizations (statistical under-representations) of demographic groups have been identified in the City's Citywide Equal Employment Opportunity Database System (CEEDS).  Based on self-reporting hiring data from the City's agencies, CEEDS engages in a statistical analysis of each of the City's 31 job groups to determine whether the City's hiring practices have caused an adverse impact. (i.e. a lack of representation of a demographic group based on the estimated number of eligible employees in the catchment area) During the audit period and time relevant herein, DoITT had an underutilization of African Americans/Blacks and women in the Science Professionals job group.  Plaintiff was hired to work in the Computer Specialist job title in the ECTP. Ms. Collymore's job title  fell under the very title that Defendants' had been accused of discriminating against in their hiring practices.

### B.  DoITT Hires Ms. Collymore to Address Audit Findings but does so in a Discriminatory Fashion:  Ms. Collymore is low balled in terms of Salary and Title

In or around May 2015, Ms. Collymore applied to three Project Manager positions at DoITT:  Project Manager for Logging and Recording; Project Manager for Risks and Issues; and Project Manager for Training.  In or around June 2015, Plaintiff interviewed for the Logging and Recording Project Manager position.  Defendants filled that position with the lesser qualified and experienced Raquel Cruz and paid her the $120K Plaintiff sought.  The record contains a factual dispute as to whether Ms. Cruz, a white woman, was as qualified for the position as Ms. Collymore. There is also a factual dispute as to whether the Project Manager for Logging and Recording is a more technical position, as Defendant Kirks asserted during the course of his deposition.

Ms. Collymore is an African American woman.  Plaintiff possessed: a Masters' Degree; Project Management Professional (PMP) Certification; and AGILE certification.  During her employment at DoITT, Plaintiff also obtained SCRUM Master certification.  At the time relevant, none of the named Defendants, and neither Ms. Cruz nor Ms. Donohue had comparable educational degrees from accredited institutions.  Further, Defendant Maluf also gave conflicting reasons for why Ms. Collymore was not entitled to the $120K listed in the job vacancy notices.  Defendant Maluf initially told Ms. Collymore that in order to obtain the full $120K for the position, she would have to re-submit the posting.  However, at her deposition, Defendant Maluf testified that the reason she did not pay Ms. Collymore the listed $120K was because the Project Manager for Training position was less technical than the others.  Again, Ms. Collymore interviewed for the Logging and Recording position and was passed over for the lesser qualified Raquel Cruz, a white woman.  **(Exhibit  3:  Collymore Dep. p. 73:19-24 and 97:19-25-98:1-7; and Exhibit 4: Maluf Dep.48:13-25-49)**

As a Project Manager, Plaintiff had the following reporting structure:  she reported directly to Matthew Austin, Director of Project Management; she reported indirectly to Lisa Maluf ("Maluf"), Deputy Program Manager and Chief of Staff of the ECTP; and she reported indirectly to David Kirks ("Kirks"), Associate Commissioner and Director of the ECTP, who also supervised Defendants Austin and Maluf.  The record contains a factual dispute however as to

whether Plaintiff actually reported to Defendant Maluf. Ms. Collymore contended that she did, while Defendant Maluf contended otherwise at her deposition. **(Exhibit 3:  Collymore Dep. p. 123: 18-24; and Exhibit 4:  Maluf Dep. p. 143:4-9)** However, the emails from Defendant Maluf that demanded Plaintiff's attendance at her meetings, and the transcript of the January 2016 meeting, where Defendant Maluf suggested that DoITT tend to support Ms. Collymore's perspective on her reporting and hierarchical rubric. **(Exhibit 5:  Email from Collymore dated April 14, 2016 with the Subject:  FW: FDCAD Risk and Issues Working Session DEF_COL_609-614)**

**C.    Defendant Maluf's Callous Unwanted Uncontrolled Physical Violation of Ms. Collymore's Bodily Integrity**

Defendant Maluf touched Plaintiff inappropriately for the first time in August 2015.  At that time, Plaintiff, Maluf and their colleagues were at the agency's picnic. **(Exhibit 3:  Collymore Dep. p. 53:10-22)**  In September 2015, Plaintiff began to experience unwanted touchings from Maluf during their weekly one-on-one meetings.  Defendant Maluf's touchings comprised of any of the following actions: touching and rubbing Plaintiff's arm; patting Plaintiff's leg; resting her arm on Collymore's back; and or grabbing Collymore's hands and legs.  At the agency picnic, at the first incident, Ms. Collymore clearly communicated to Defendant Maluf that she did not like to be touched.  In response, Defendant Maluf acknowledged the transgression but persisted with the unwanted physical violations and behavior. Defendant Maluf testified that she was not aware of what she was doing when she touched Plaintiff.

 After the initial touching, Plaintiff then sought to avoid Defendant Maluf's violations by distancing herself physically or positioning herself between objects. When Ms. Collymore's efforts proved futile, Plaintiff shared her discomfort about Defendant Maluf's behavior with other staff members.  The violations became so rampant that Ms. Collymore set up a mirror at her work station so that she could see Defendant Maluf when she approached. Additionally, Plaintiff's co-worker Gene Yurman, would also warn Ms. Collymore when Defendant Maluf was nearby.

**D.  Defendants Austin and Maluf Presided Over a Racially and Gender Based Hostile Work Environment**

Once Ms. Collymore complained to Defendant Maluf about the touchings, she also began to be attacked by Defendant Austin, who Plaintiff and other staff surmised had discriminatory animus towards staff with racial minority backgrounds. Racial and gender minorities were paid less by white staff in the ECTP; and racial and gender minorities were also denied training opportunities.  Defendants Austin, Maluf and Kirks presided over training opportunities and determined the salaries of unit staff.  Plaintiff and Vera Olave, African American women, were denied training and promotional opportunities.  The record contains disputed issues of fact as to whether Defendants' explanations that the training that Plaintiff and Ms. Olave sought was relevant to their jobs.  Defendants have not offered anything but their conclusory assertions that the training was not relevant; while Ms. Collymore has contended conversely.  In the absence of admissible evidence, the Court must leave this credibility determination to the province of a jury of Ms. Collymore's peers.

Additionally, in the wake of Plaintiff's complaints about Defendant Maluf's behavior, both Austin and Maluf would scrutinize Plaintiff's work and her whereabouts more closely than other staff members.   Defendants Austin and Maluf would have verbal confrontations with Ms. Collymore in front of staff and at times would ignore her when she spoke at group meetings.  Defendants Maluf and Austin would also make attempts to write her up on manufactured allegations of being Away Without Leave (AWOL).

Defendant Austin would also sabotage Plaintiff's work during the unit's weekly meetings.  In some instances he would delete her slides from the shared drive. Subsequent to deleting her slides, Defendant Austin would then accuse Ms. Collymore of not uploading them in the first place. In other instances Defendant Austin would ignore Ms. Collymore altogether.  When Plaintiff did attempt to converse with Defendant Austin,  he would talk over her or openly berate her in front of the unit. Defendant Austin would also openly ridicule and or ignore Ms. Collymore and staff members of color within the unit at these weekly meetings. For example, staff person Vera Olave would file an

EEO complaint against Defendants Maluf and Austin that alleged similar allegations. **(Exhibit 6:  Olave EEO Complaint DEF_COL_231-253)**

Defendant Maluf would also attack Collymore in front of the staff during weekly meetings.   Not limited to the incidents described herein, on one occasion Defendant Maluf attacked Plaintiff for completing her work ahead of schedule.  On another occasion, Defendant Maluf ridiculed and attacked Ms. Collymore's request to obtain a $900 projector; Defendant Maluf engaged in this conduct despite the fact that the ECTP presided over a multi-billion dollar budget.  **(Exhibit 3:  Collymore Dep. p. 82:14-23-83:1-9; and 84: 1-25-85:1-2 Exhibit 7:  Defendants' RFA ¶ 58 p.23)**

Ms. Collymore would also be denied training opportunities and the overtime she needed to perform the core aspect of her job.  Ms. Collymore was the Project Manager for ECTP's Training initiative, and Defendants refused to allow her comp time or over time when she sought to facilitate the training for the vendors' she monitored.   There are triable issues of fact as to whether Plaintiff was the only person who could perform this job function.  Defendant Austin contended that she was not, while Plaintiff contended otherwise.  **(Exhibit 3:  Collymore Dep. p. 202:12-25-p.205; Exhibit 8: Collymore Decl. ¶ 64 and Exhibit 9: Austin Dep. p. 291:22-25-292:1-6)**

**E.  Defendants Presided over a Retaliatory Hostile Work Environment**

Defendants Maluf and Austin's harassment intensified when Plaintiff made her initial complaint to DoITT's Office of Equal Employment Opportunity ("EEO") where she complained of working in a hostile work environment and Defendant Austin's violation of the Code of Conduct. **(Exhibit 10:  Email from Collymore dated January 9, 2016 with the Subject: Violation of Code of Conduct DEF_E_COL_134-135)** Subsequent to this email, during the same week in January, Defendants Maluf and Austin had a one-on-one  meeting where they threatened Ms. Collymore.  During this meeting with Defendants Maluf and Austin, Ms. Collymore disclosed that she suffered from migraine headaches and that she needed to take lunch at a prescribed time of the day.   Fully cognizant of Ms. Collymore's condition, and after their initial effort to terminate Ms. Collymore on January 13, 2016, Defendants Maluf and Austin set out to make Ms.

Collymore's work environment impossible  by scheduling meetings where she could not take lunch between 12pm and 2pm. **(Exhibit 11: Memo from Austin to Director of Labor Relations M. Driscoll dated January 13, 2016 DEF_COL_309-310)**

Contrary to Defendants' representations, the meetings with Defendants and vendors took place much more often than disclosed in discovery.  Ms. Collymore had weekly mandatory one-on-one meetings with Maluf and Austin.  She also had weekly unit meetings with Defendants.  In addition, Ms. Collymore had weekly meetings with vendors, the NYPD and FDNY.  Accordingly, Plaintiff contends that after she disclosed her condition to Defendants Austin and Maluf, between January and June 2016, that at a minimum of four times a month, if not more, Defendants would purposefully schedule meetings during her lunch hour. **(Exhibit 8: Collymore Decl. ¶ 62 and 67)**  Defendants would engage in this conduct, even though Defendant Austin had instructed Ms. Collymore to block out her lunch hour to avoid conflicts. **(Exhibit 12:  Email from Austin dated November 23, 2015 with the Subject:  ECTP PMO OT Policy & Procedures DEF_COL_603)**  When Ms. Collymore complied with that directive, Defendants seized upon the opportunity to manufacture additional grounds to criticize her performance and temperament in the workplace. Defendants' efforts had an inevitable effect: the number of migraines Ms. Collymore experienced inevitably increased, her working conditions became intolerable, and she began to miss more days of work due to stress and the exacerbation of her other medical conditions (i.e. colitis and hypertension). **(Exhibit 3: Collymore Dep. p. 86-89)**

Ms. Collymore also experienced retaliation based on her protected activities under both Title VII and § 1983. During her tenure at DoITT, Ms. Collymore engaged in several distinct instances of protected activity:  in September 2015, when she complained to Maluf that she didn't like to be touched;  on January 9, 2016, when she complained to EEO Officer Kenneth Hunter; on January 15, 2016 when she disclosed to her union representative Austin's instruction to hide documents from the New York City Department of Investigations ("DOI") on the J Drive; in January 25, 2016 when she complained to EEO Officer Kenneth Hunter about Defendant Austin's attacks and the hostile work

environment they created;  on January 25, 2016 when she filed her first charge with the Equal Employment

Opportunity Commission ("EEOC"); on April 25, 2016 when she filed her second charge with the EEOC; on June 22,

2016 when she complained to Defendant Kirks about discrimination, sexual harassment, retaliation and corruption;

and on July 5, 2016, when she filed a second charge of discrimination at the EEOC after she was constructively

discharged on June 29, 2016.

In the wake of each of these complaints, Plaintiff's work environment became progressively more hostile and

discriminatory.  Plaintiff would experience more verbal abuse and attacks.  Within days of Ms. Collymore's complaint

to EEO Officer Kenneth Hunter, Defendants Maluf and Austin would plot on how to terminate Plaintiff despite the

fact that she did not have any performance deficiencies. **(Exhibit 4: Maluf Dep. p. 255:16-20; and p. 332:8-11)**

Within the first quarter of 2016, Defendants also removed Ivan Goldberg, Plaintiff's subject matter expert and took

her off the FDNY project. (**Exhibit 13: Email from Austin dated March 17, 2016 with the Subject:  Block 2/BPRs**

**Training DEF_COL_E_521 and Exhibit 9: Austin Dep. p. 186:17-25-188:1-24)**  There are triable issues of fact: as to

whether Goldberg's work had been completed; and whether Ms. Collymore needed Mr. Goldberg to do her job.

Defendant Kirks contended that Mr. Goldberg's contract had come to an end, while Ms. Collymore contended that his

departure was abrupt and that it put her at a professional disadvantage in her capacity of Project Manager of

Training. **(Exhibit 3:  Collymore Dep. p. 196:23-25-197: 1-25; and Exhibit 14: Kirks Dep. p. 172:6-25-173:1-15)**

Due to the highly stressful environment Defendants created, Accordingly, Plaintiff continued to miss more

days of work.  After repeated instances where DoITT failed to address Plaintiff's complaints, and when it became

apparent upon complaining to Defendant Kirks that he would not address her complaints of discrimination, retaliation

and or corruption as well, on June 29, 2016, Plaintiff was constructively discharged.  Ms. Collymore handed Defendant

Kirks an undated letter of resignation with the hopes that he would address her concerns.  Instead of doing so, he

asked for Plaintiff's building ID and phone, and told her to notify everyone that it was her last day on the spot.  Due to

the increased number of migraines she experienced during her 9 month tenure at DoITT, within four months of her

constructive discharge, Ms. Collymore was diagnosed with a brain aneurysm.

**ARGUMENT**

**POINT I**
**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**
**MUST BE DENIED IN ITS ENTIRETY**

**1.   Defendants Fail to Meet their Burden Under the General Standard for Summary Judgment**

A movant is entitled to summary judgment only if there are no genuine disputes as to any material facts. Fed.

R. Civ. P. 56(a). Green v. New York City Transit Auth. 15 CV 8204 (ALC), 2020 U.S. Dist. LEXIS 172519, at * 10-11

(S.D.N.Y. Sept. 21, 2020) citing Cortes v. MTA New York City Transit, 802 F. 3d 226, 230 (2d Cir. 2015)(citation

omitted); see also Schaper v. Bronx Lab. Hosp. Ctr., 408 F. Supp. 3d 379, 387 (S.D.N.Y. Sept. 30, 2019)(citation

omitted) Precedent in this Circuit is clear: the movant for summary judgment bears the burden of establishing the

absence of a question of fact.  Green, 2020 U.S. Dist. LEXIS 172519, at * 10-11; see also Carlton v. Mystic Transp., Inc.

202 F.3d 129, 135 (2d Cir. 2000) (citation omitted)   To prevail on their motion, the moving party must meet its

burden: they must inform the Court of the bases of their motion; and they must also identify those portions of the

record which it believes demonstrate an absence of a genuine issue of fact.  Celotex Corp. v. Catrett, 477 U.S. 317,

323, 106 S. Ct. 2548, 91 L. Ed 2d 265 (1986)

**2.   Reduced Burden for Summary Judgment in Employment Discrimination Cases**

Employment discrimination cases raise special issues on summary judgment.  Kenney v. New York City Dep't of

Educ., No. 06 Civ. 5770, 2007 U.S. Dist. LEXIS 77926, at * 7 (S.D.N.Y. Oct. 27, 2007) The Second Circuit recognizes that

employment discrimination cases typically involve circumstantial evidence that revolve around questions of intent

and credibility. Gallo v. Prudential Services, 22 F.3d 1219 (2d Cir. 1994). Unsurprisingly and typically, employers tend

to deny that their actions were rooted in discriminatory and or retaliatory animus. Fincher v. Depository Trust and

Clearing Corp., 604 F.3d 712, 726 (2d Cir. 2010)(recognizing that in discrimination cases, "the defendant will rarely admit to having said or done what is alleged")(citations omitted) Therefore, Courts are generally cautious in granting summary judgment in employment discrimination cases, where as is the case in the matter herein, that the employer's intent is at issue. Hornig v. Trs. Of Colum. Univ., 17 Civ. 3602 (ER), 2022 U.S. Dist. LEXIS 60683, at * 30 (S.D.N.Y. March 31, 2022)

In ruling on summary judgment motions, the Second Circuit has advised that the District Court must scrutinize affidavits and depositions for circumstantial proof, which if believed could show animus. Desir v. City of New York, 453 F. App'x 30, 33 (2d Cir. 2011)(citing Gallo v. Prudential Residential Servs., Ltd. P'ship, 22 F. 3d 1219, 1224 (2s Cir. 1994) Consistent with these findings, Plaintiff has presented a variety of circumstantial evidence for the Court to evaluate, again she has done so in light of the reality that rarely if ever the employer leaves a smoking gun. Chambers v. TRM Copy Ctrs. Corp., 43 F. 3d 29, 37 (2d Cir. 1994)

Conversely, Defendants have failed to provide admissible record evidence to meet their burden: that the reasons for their adverse employment actions were not rooted in pretext. Where there is conflicting record evidence, the Second Circuit has explained, that Title VII distinguishes between those reasons that are factually false and those that are false in order to hide discriminatory or retaliatory motives. Hornig, 2022 U.S. Dist. LEXIS 60683, at * 62-63 citing Fisher v. Vassar Coll., 114 F.3d 1332, 1337 (2d Cir. 1997) Clearly Defendants' contradictory record testimony about Plaintiff's alleged performance issues, refuted attendance issues and their attempt to fire her within days of her complaints could easily lead a reasonable trier of fact to determine that Defendants' justifications were false to hide their discriminatory or retaliatory motives.

**POINT II:**
**PLAINTIFF's RETALIATION CLAIMS**
**UNDER TITLE VII, 1983, NYSHRL AND NYCHRL SHOULD NOT BE DISMISSED**

1. Retaliation Standard is Identical under Title VII and §1983

Retaliation claims under Title VII, NYSHRL as well as § 1983 under the Equal Protection Clause, mirror each other.

Vega v. Hempstead Union Free Sch. Dist., 801 F.3d 72, 91 (2d Cir. 2015).  Accordingly, retaliation claims under all

three statutes utilize the McDonnell Douglass burden shifting rubric and require an employee to establish: (1) that

she engaged in an activity protected under the statute; (2) that the employer was aware of the activity; (3) that the

employer took adverse employment action against her; and (4) there was a causal connection exists between the

alleged action and protected activity. Pistello v. Bd. of Educ. of the Canastota Cent. Sch. Dist., 808 Fed. Appx. 19, 21

(2d Cir. April 10, 2020)  Ultimately, the burden of establishing a prima facie case of retaliation is de minimis. Hornig v.

Trs. Colum. Univ., 17 Civ. 3602(ER), 2022 U.S. Dist. LEXIS 606831, at * 60 (S.D.N.Y. March 31, 2022) (citations omitted).

Once the Plaintiff has satisfied her prima facie burden, the burden then shifts to the employer to articulate legitimate

non-retaliatory reasons for the challenged employment decisions.  Pistello, 808 Fed. Appx. 21 citing Treglia v. Town of

Manelus, 313 F. 713, 719 (2d Cir. 2002)

A. Plaintiff Engaged in Protected Activity 6 Times During the Course of Her Employment and on a 7th Occasion
After She was Constructively Discharged

There are disputed issues of fact around the number of times Plaintiff engaged in protected activities.

Defendants' brief does not list all of the times Plaintiff complained of harassment, discrimination and or retaliation.

Plaintiff verbally directly complained to Defendant Maluf about her harassment and asked that she stop touching her

in September 2015.  Ms. Collymore filed three complaints in January 2016 alone:  one with DoITT's EEO Officer

Kenneth Hunter; a second complaint was filed with DoITT's Director of Labor Relations Myles Driscoll, Plaintiff's Union

Representative Mike Lanni, that disclosed Defendant Austin's directive to hide documents from DOI on the agency's J

Drive and; and a third complaint was filed on January 25, 2016 with the Equal Employment Opportunity Commission.

Defendants' brief also misrepresents the factual record.  Ms. Collymore testified at her deposition that she told

Defendants Maluf and Austin about her condition during the one-on-one meeting where they bullied her in January

2016.  She also testified that after that meeting, Defendants Maluf and Austin intentionally scheduled meetings during her lunch hour fully aware that she would experience migraines.

There is also a disputed issue of fact as to the frequency of the meetings Ms. Collymore attended and the number of meetings that Defendants scheduled during her lunch hour.  Defendants contends that discovery produced 14 calendar invites.  While Plaintiff has consistently contended that during the course of her 9 months of employment at DoiTT, she had weekly one on one meetings with Defendants Austin and Maluf (at least 36 invites);  weekly unit meetings with Defendants and ECTP unit staff members (at least an additional 36 invites); and at least weekly meeting invites with vendors, NYPD and FDNY staff (at least once a week (an additional 36 invites)  From January 2016 to June 2016, Plaintiff contends that at least 4 times a month if not more, Defendants would intentionally schedule meetings during her lunch hour.  **(Exhibit 8: Collymore Decl. ¶ 62 and 67)**

Therefore, in the absence of any admissible evidence to establish that Ms. Collymore was invited to 72 meetings between January and April 2016,  and that Defendants scheduled meetings during her lunch hour at least 24 times.  The Court must credit Plaintiff, the non-movant's account of event as true for purposes of summary judgment.  Further, the extensive and intense email and verbal exchanges between Plaintiff, Defendants Maluf and Austin could lead a reasonable trier of fact to determine that the lunch hour meeting conflicts occurred regularly and that it remained an ongoing issue for all involved.

The record also presents a triable issue of fact as to whether Plaintiff was required to take her lunch between 12pm and 2pm.  Plaintiff testified that she was told at her orientation that as a  Computer Specialist, she was told by Defendants' HR staff that she must take her lunch between the hours of 12 and 2pm.  Plaintiff further contends that Defendants' time keeping system would not permit her to take lunch outside of that window.   **(Exhibit 8: Collymore Decl. ¶ 20)**

Ms. Collymore further testified that she did not initially raise the issue of her health, because she believed that with Defendants' prescribed fixed 2-hour window for lunch, that she would not experience any problems.  Further she was also reluctant to disclose her health status until Defendants attacked her about alleged undocumented sick leave at their meeting in January 2016. Again contrary to Defendants' assertion, it was at that time she told Defendants Maluf and Austin that she experienced migraines if she did not take lunch.  Further, subsequent to that meeting, Ms. Collymore produced medical documentation to Defendant Austin about her condition.  At which time he callously remarked to Plaintiff:  TMI (as in too much information). **(Exhibit 8: Collymore Decl. ¶ 62)**

B.   Defendants' Misconduct Viewed Both in its Totality and in Isolation Constitute Adverse Employment Actions

Ms. Collymore's work environment began to change at DoITT in September 2015, after she complained to Defendant Maluf about her unwanted touchings.  In or around September 10, 2015, HR sent out an email to DoITT staff about the Pope Francis volunteer opportunity.  In order to volunteer, staff had to have their supervisor's approval.  Ms. Collymore signed up for the opportunity and was permitted to volunteer on September 25, 2015. **(EXHIBIT 15:  Email from HR with the Subject:  Volunteer Opportunities for Pope Francis Event DEF__COL_233)** Since Ms. Collymore received her credential voucher, she believed that Defendants were on notice as to her whereabouts since their approval was needed for her to obtain the voucher.  **(Exhibit 8: Collymore Decl. ¶¶ 29-33)** This was especially the case, since she had disclosed to everyone in her seating area, including Defendant Austin, that she would be at the event.

Defendants' brief also omits the removal of Plaintiff's subject matter expert, Ivan Goldberg, within weeks of her EEOC Charges in January 2016 and April 2016.  Defendants' brief also omits Defendant Austin's sabotage of Ms. Collymore's work product, where he either removed Plaintiff's slides from the weekly queue, or refused to provide her with backup like the other staff when she was out of the office.  Ms. Collymore would make multiple requests and

inquiries about both issues to no avail. **(Exhibit 16:  Email from Collymore dated November 23, 2015 with the Subject: ECTP PMO Overtime Policy & Procedures DEF_E_COL_222-225)**

Further, within days of Ms. Collymore's complaints in January, Defendants Maluf and Austin sought to terminate Plaintiff.  At that time, they insisted on meeting with Ms. Collymore where they berated her for rating her performance favorably.  (**Exhibit 8:  Collymore Decl. ¶ 60** )  As is supported by Plaintiff's transcript of the January 2016 meeting she recorded, although they had sought to manufacture issues to the contrary, Defendants Maluf and Austin conceded that they did not have any issues with Plaintiff's performance. Their position was further supported by the testimony that Defendants' provided at their respective depositions.   Again, Defendants'  brief contradicts the record. **(Exhibit 4: Maluf Dep. p. 255:16-20; and 332:8-11**)

Defendants' brief asks the Court to view the adverse employment actions Ms. Collymore experienced in isolation. Defendants' position is contrary to the law and precedent.  Courts in this Circuit have found that the determination of as to whether conduct amounts to adverse employment actions needs to be considered both separately and in the aggregate. Pistello v. Bd. of Educ. of the Canastota Cent. Sch. Dist., 808 Fed. Appx. 19, 23 (2d Cir. April 10, 2020) citing Hicks v. Baines, 593 f.3d 159, 165 (2d Cir. 2010) (citation omitted) It has been further held, that even minor acts of retaliation can be sufficiently substantial in their totality as to be actionable. Hornig v. Trs. Colum. Univ., 17 Civ. 3602 (ER), 2022 U.S. Dist. LEXIS 60683, at  * 62 (S.D.N.Y. March 31, 2022); see also Pistello, 808 Fed. Appx. 23  (citation omitted)

C.   The Record Contains Sufficient Evidence to Establish a Causal Link Between Defendants' Adverse Employment Actions and Ms. Collymore's Protected Activities

Although precedent requires an employee to establish that the employer's actions were the but-for cause for the alleged wrongful actions, it does not require proof that retaliation was the only cause in the absence of the retaliatory motive.  Hornig, 2022 U.S. Dist. LEXIS 60683, at 55, citing Zann Kwan v. Andalex Grp., LLC 737 F.3d 834, 846 (2d Cir. 2013) In order to accomplish that objective, Courts have utilized a full review of the record rather than a piecemeal

approach that trusts innocent explanations for individual strands of evidence.  Id. citing Dodd v. City of N.Y., 489, F. Sup. 3d 219, 251 (S.D.N.Y. Sept. 25, 2020)(citations omitted)  Plaintiff respectfully argues that Defendants' brief encourages the Court to engage in the very same analysis that precedent has cautioned against.  Accordingly, Plaintiff respectfully argues, that when viewed in its totality, the record clearly shows the causal connection between Plaintiff's multiple complaints and the adverse employment actions she experienced that led to her constructive discharge.

D.  Ms. Collymore Worked in A Retaliatory Hostile Work Environment that Led to Her Constructive Discharge

Courts in this Circuit have recognized that retaliation through the creation or maintenance of a hostile work environment is an adverse employment action sufficient to give rise to Title VII liability.  Salerno v. City Univ. of New York, No. 99-CV-11151, 2003 WL 22170609, at * 11 (S.D.N.Y. Sept. 18, 2003)  Accordingly, Plaintiff's retaliatory hostile work environment claims should be evaluated under the same standard that severe or pervasive standard that is applicable to hostile work environment claims.   Johnson v. City of New York, 16 cv 6426(KAM)(VMS), 2021 U.S. Dist. LEXIS 61908, * 43 (E.D.N.Y. March 30, 2021); see also Richardson v. New York State Dep't of Correctional Serv., 1580 F.3d 426, 446 (2d Cir. 1999)

The test determining whether an employee works in a hostile work environment has both objective and subjective components.  A work environment will be considered hostile if a reasonable person would have found it to be so and if Plaintiff subjectively perceived it to be that way.  Johnson, 2021 U.S. Dist. LEXIS 61908, at * 43-44 citing Mormol v. Costco Wholesale Corp., 364 F.3d 54, 58 (2d Cir. 2004)(citation omitted)

To establish a causal connection between the protected activity and the alleged retaliatory hostility, some increase in the discrimination or harassment either ratcheting up of pre-existing behavior or new additional forms of harassment must occur for the employee to make out a viable retaliation claim.  Johnson, 2021 U.S. Dist. LEXIS 61908, at * 44 (citation omitted); see also Gregory v. Daly, 243 F.3d 687, 690 (2d Cir. 2001)(holding that Plaintiff adequately

stated a retaliation claim based on her allegation that her supervisor's conduct significantly worsened after she

complained about his sexual harassment and filed a lawsuit against him in state court)

Courts in this circuit have found the receipt of a counseling memo in the wake of an employee's EEOC Charge

sufficient to show that both animus and a retaliatory motive played roles in the creation of a hostile work

environment.  Sooroojbaile v. Port Auth. of N.Y. & N.J., 816 Fed. Appx. 536, 435 (2d Cir. June 4, 2020)

Plaintiff respectfully argues that the January 13th Termination memo and meeting were the similar to the fact

pattern in Sooroojbaile. Defendants bullied Plaintiff after they believed she had rated her performance too highly.

**(Exhibit 8: Collymore Decl. ¶ 8)**  Also during this same month, they removed Ivan Goldberg, Plaintiff's subject matter

expert and took her off of the FDNY project.   Defendants Maluf and Austin claim that Plaintiff was removed due to

complaints from the FDNY.  However, Defendant Kirks testified that he had not heard any complaints from the NYPD

and FDNY about Plaintiff's performance, and that overall he found her performance to be adequate.  **(Exhibit 9:**

**Austin Dep. p. 98:10-25-p.101; and Exhibit 14:  Kirks Dep. p. 66:5-16)**  Further, there is a disputed issue of fact as to

the number of times Defendants scheduled meetings during Plaintiff's lunch hour, after she disclosed to them in

January 2016, that she suffered from a migraine condition.    Again, a reasonable fact finder could determine that the

adverse employment actions Ms. Collymore experienced, when viewed in the aggregate created a retaliatory hostile

work environment and that they led to her constructive discharge from the agency.

E.  **Defendants' Inconsistent Explanations for their Retaliatory Employment Actions Are Sufficient to Establish
    Pretext; Ms. Collymore was Constructively Discharged from DoITT**

Pretext may be demonstrated either by the presentation of additional evidence that showed that the employer's

proffered explanation was unworthy of credence or by reliance on the evidence comprising the prima facie case,

without more.  Hornig,  2022 U.S. Dist. LEXIS 60683, at  * 62 (citations omitted)  Documents penned by Defendants

conflicted with their deposition testimony where they stated that Ms. Collymore had performance issues.

Defendants' time and leave records were inaccurate and effectively refuted by Ms. Collymore when they attempted

to write her up for undocumented attendance issues.  In an attempt to obfuscate their discriminatory denial of overtime and compensatory time, Defendants attempted to conflate the two:  Defendants consistently denied Plaintiff overtime; Defendants had gentlemen agreements with white staff persons when it came to over time and their work hours.

The record contained conflicting testimony and evidence surrounding Ms. Collymore's constructive discharge on June 29th, 2016.  Defendant Kirks stated that Ms. Collymore resigned.  Ms. Collymore gave Defendant Kirks an undated resignation letter, that did not specify when her "alleged" resignation would go into effect.  Defendant Kirks's actions spoke louder than his testimony and the fallacious emails  that were circulated:  he asked for Ms. Collymore's DoITT issued ID on the spot and any DoITT issued property.  Upon her compliance and relinquishment of the requested items, Ms. Collymore was effectively terminated; she could not return to work at DoITT.

### F.   Ms. Collymore's Retaliation Claims Under the NYSHRL & NYCHRL Survive Summary Judgment

Retaliation claims under the NYCHRL are similarly analyzed under Title VII's burden shifting framework. Hornig, 2022 U.S. Dist. LEXIS 606831, at * 55 citing Malena v. Victoria's Secret District, LLC, 886 F. Supp. 2d 349, 361-62 (S.D.N.Y. 2012)(citations omitted)  However, the NYCHRL diverges from Title VII analysis in 2 respects:  1) the Plaintiff only needs to prove that something happened that would reasonably likely to deter a person from engaging in protecting activity.  Id (citation omitted); see also Mihalik v. Credit Agricole Cheuvreux N. Am., Inc., 715 F3d 102, 112(2d Cir. 2013); and 2) the NYCHRL does not require a Plaintiff to show but-for causation. Instead, summary judgment is only appropriate if the Plaintiff cannot show that retaliation played any part in the employer's decision.  Id. citing Dodd v. City of New York, 489 F. Supp. 3d 219, 269 (S.D.N.Y. 2020)(citations omitted), citing Brightman v. Prison Health Serv. Inc., 108 A.D. 3d 739, 791-92 ("To establish its entitlement to summary judgment in a retaliation case a Defendant must demonstrate that the Plaintiff cannot make out a prima facie claim of retaliation, or having offered legitimate non-retaliatory

reasons for the challenged actions, that there exists no triable issue of fact as to whether the Defendant'

explanations were pretextual")

In the matter herein, the record clearly established that while she was employed at DoITT, on at least 6

separate occasions Ms. Collymore engaged in protected activities. Again, Defendants' brief only acknowledges

three. Under the NYCHRL, Ms. Collymore's complaint to Defendant Maluf that she did not like to be touched is

recognized as protected activity under the City Human Rights Law. Colon v. New York City Hous. Auth., 16 CV

4540(VSB), 2021 U.S. Dist. LEXIS 100601, at * 42 (S.D.N.Y. May 26, 2021) citing Mihalik v. Credit Agricole

Cheuvreux N. Am., Inc., 715 F.3d 102, 109 (2d Cir. 2013)  (the Court held that opposing discrimination can

include instances where an employee merely made clear her disapproval to Defendant of their discriminatory

conduct) .

In the event the Court deems fit to apply the but-for cause standard as argued in Defendants' brief,

Ms. Collymore satisfies that burden as well.  Again, Plaintiff cites: the increased number of meetings

Defendants scheduled during her lunch hour once she told them she suffered from migraines; Defendants

attempt to terminate her five days after she complained to the EEO Office; the removal of her subject matter

expert, Ivan Goldberg; and her removal from FDCAD.  Plaintiff contends that Defendants engaged in each of

these adverse employment actions during the month of January, the same month she complained to the EEO

Office, the EEOC and Labor Relations.   Plaintiff respectfully argues that similar to the Plaintiffs in Colon and

Sooroojbailie,  that she has met her burden under the City Human Rights Law.  Colon, 2021 U.S. Dist. LEXIS

100601, at * 55-56 citing Kwan v. Andalex LLC, 737 F.3d 834, 844 (2d Cir. 2013) citing Gordon v. N.Y.C. Bd. of

Educ., 232 F.3d 111, 116 (2d Cir. 2000)

**POINT III**
**PLAINTIFF'S GENDER DISCRIMINATION AND SEXUAL HARASSMENT**
**CLAIMS UNDER THE NYSHRL AND NYCHRL SHOULD NOT BE DISMISSED**

**1.** Ms. Collymore's Perception of Her Work Environment Should be Considered: Defendant Maluf's Repeated Unwanted Touchings of Plaintiff Sexually Violated Plaintiff and Satisfies Her Burden for Establishing Sexual Harassment Under the NYCHRL

A.   Plaintiff has Met Her Burden under the SHRL

Courts engage in a bifurcated analysis when they rule on sexual harassment claims under the NYSHRL:  objectively they examine the overall hostility of the employee's environment; and they subjectively assess the employee's perception of their environment as abusive. Pugni v. Reader's Digest Ass'n, 05 Civ. 8026 (CM), 2007, U.S. Dist. LEXIS 26284, at * 41 (S.D.N.Y. April 9, 2007); see also Harris v. Forklift Sys. Inc., 510 U.S. 17, 114 S. Ct. 367, 126 L. Ed 2d 295 (1993)(citations) Defendants' brief ignores the law. Their brief ignores the second part of this analysis. Similar to Defendant Maluf during the course of her deposition, Defendants' brief fails to take into account Ms. Collymore's perception of Defendant Maluf's conduct and or Plaintiff's hostile environment.

The Second Circuit has found that careful consideration of the social impact of workplace behavior often depends on a constellation of surrounding circumstances, expectations and relationships, which may not be fully captured by a simple recitation of words or physical acts performed.  Pugni, 2007 Dist. LEXIS 26284, at * 45-46 citing Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 81-82, 118 S. Ct. 998, 140 L.Ed 2d 201 (1998).   In Pugni, the Court further held:

> Today while gender relations in the workplace are rapidly evolving, and views of what is appropriate behavior are diverse and shifting, a jury made up of a cross section of our heterogenous communities provides the appropriate institution for deciding whether borderline situations, should be characterized as sexual harassment and retaliation.  Id citing Gallagher v. Delaney, 139 F.3d 338, 342 (2d Cir. 1998)

Plaintiff respectfully argues that consistent with this Circuit's sage words, the facts of her claim present a close case, which presents a difficult drawing line that makes summary judgment improper and is best left for a jury's consideration at trial.  Pugni, 2007 Dist. LEXIS 26284, at *45, citing Gallagher, 139 F.3d 347-48

B.   Plaintiff Has Satisfied Her Burden for Establishing Hostile Work Environment and Gender Discrimination under the NYCHRL

The standard for establishing a hostile work environment claim is lower and offers broader protections under the NYCHRL.  Alvarado v. Nordstrom Inc., 685 F. App'x 4, 8 (2d Cir. 2017); see also Bermudez v. City of New York, 10 CV-1162 (ALC), 2015 U.S. Dist. LEXIS 43257 (S.D.N.Y. March 31, 2015)  The relevant question at summary judgment under the City Human Rights Law, is whether the Plaintiff was treated less well than other employees because of her gender.  Hornig, 2022 U.S. Dist. LEXIS 60683, at * 34.  Plaintiff respectfully argues that she has satisfied this requirement. Defendant Maluf admitted that she "caught" herself touching two other female employees and attempted to stop herself:  Tanya Hill Murphy and Widade Harchen.  **(Exhibit 8: Collymore Decl. ¶ 48-50 ; and Exhibit 4: Maluf Dep. p. 91-92).**

The record is also replete with instances where Ms. Collymore testified that she and Vera Olave, women, were treated more harshly by Defendants Maluf and Austin.  Ms. Collymore testified that Defendant Austin was not as disrespectful or combative with men in the office, that he would accord them deference and acknowledge them when they spoke.  Most telling was Ms. Collymore's testimony about her conversation with a white male colleague, Gene Yurman.  Mr. Yurman would approach Plaintiff and ask whether she noticed that both she and Ms. Olave had experienced problems with Defendants Austin and Maluf. He also conveyed to her that she and Ms. Olave had two things in common: they were women and they were African American/Black.  **(Exhibit 3: Collymore Dep. p. 80:17-25)** In further support of Mr. Yurman's observation was the fact that Ms. Collymore and Ms. Olave both filed discrimination complaints with Defendants' EEO Office.  **(Exhibit 6: Olave EEO Complaint)**

1.   Defendants' Waived the Equal Opportunity/Bisexual Harasser Affirmative Defense When they Failed to Raise it in their Answer to Plaintiff's Complaint

Defendants attempt to explain away Defendant Maluf's repeated violation of Ms. Collymore bodily integrity, by saying that she was an "equal opportunity harasser:"  that she touched both men and women without regard.  There

are divergent views throughout the Circuits as to whether such an argument rises to the level of an affirmative defense. In at least the First Circuit, Defendants' failure to raise the claim in either their answer or amended answer constituted waiver of the defense. Fed. R. Civ. 8(c). <u>Chaloult v. Interstate Brands Corp.</u>, 02 Civ. 02-249-P-C, 2003 U.S. Dist. LEXIS 1360 (M.E. Aug. 6, 2003)

Plaintiff further contends that although some Circuits have found that Title VII may not afford protections against equal opportunity harassers, that at least in the Seventh Circuit a female employee was found to have raised a genuine issue of material fact as to whether the harassment was because of her sex, where the harassment aimed at her was more prevalent than those faced by her male co-workers. <u>Kapmier v. Emeritus Corporation</u>, 472 F.3d 930, 940-41 (7th Cir. 2009) The record testimony of Defendant Maluf has met this threshold. Defendant Maluf testified that after Plaintiff, an African American/Black woman complained about her touchings, that for the first time in her 20 plus year career, she thought about her behavior when she touched two other women of color:  Tanya Hill Murphy (African American) and Widade Harchan (Asian).  **(Exhibit 4: Maluf dep. p. 91-92).**  The record is devoid of any complaints from men surrounding allegations of misconduct against Defendants Maluf and Austin.

Overall, Defendant Maluf's testimony clearly evidenced her lack of regard for Ms. Collymore.  Defendant Maluf was questioned on at least six separate instances where Ms. Collymore called her out about touching her.  In response to these queries,  Defendant Maluf repeatedly characterized her transgressions as "mere;" and labeled them as "unconscious physical contact." **(Exhibit 4: Maluf Dep. p. 235:5-8)**  Defendant Maluf nonchalantly made these statements during the course of her deposition, even in light of the allegations filed against former Governor Cuomo. **(Exhibit 4: Maluf Dep. p. 229:23-25-p.240:1-15)**

The law is also clear that the Fargaher Ellerth defense would not apply, since Defendants Austin, Maluf and Kirks are managerial employees.  Although the parties dispute whether Defendant Maluf was in fact Plaintiff's supervisor, what is not in dispute was that Defendant Maluf acted as a resource and approved Defendant Maluf's personnel

decisions.  Defendant Maluf testified that even though she had been accused of sexual harassment and discrimination by Ms. Collymore, Defendant Kirks asked Defendant Maluf to act as a neutral third party between Plaintiff and Defendant Austin.  **(Exhibit 4: Maluf Dep. p. 256:16-25-257:1-10)**  The record also contains numerous instances where Defendants Austin and Maluf either yelled at, threatened or bullied Plaintiff, when they deemed appropriate. The record is also irrefutable that Defendants Austin and Kirks acted in managerial/supervisory capacities within the ECTP.

Nevertheless, even if Defendants sought to raise the Faragher Ellerth defense, it would still fail.  Plaintiff complained to either DoITT staff or externally on six separate occasions.  At best, Defendant Maluf was spoken to by Shaquiea Sykes from the EEO Office.  However, Defendant Maluf testified that she was not disciplined, did not get written up or face any other corrective measures after Plaintiff's accusations.  **(Exhibit 4: Maluf Dep. p. 28:20-25-29:1-24; and p. 256:16-25-p.257:1-10)**

### POINT IV:   PLAINTIFF'S DISCRIMINATION CLAIMS UNDER THE NYCHRL SHOULD NOT BE DISMISSED

1.  General Standard for Discrimination Claims

Discrimination claims under the NYCHRL must be analyzed independently and separately from any federal and state claims.  <u>Doran v. New York State Dep't of Health Office of the Medicaid Inspector Gen.</u>, 15 CV 7217 (PKC), 2019 U.S. Dist. LEXIS 166830, at  * 19 (S.D.N.Y. Sept. 27, 2019) (citing <u>Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.</u>, 715 F.3d. 102, 109 (2d Cir. 2013))  Discrimination claims under the NYCHRL law are broadly construed in favor of plaintiffs to the extent that such a construction is reasonably possible.  <u>Id.</u>  To prevail, under the NYCHRL, the Plaintiff need only show differential treatment: that she was treated less well because of a discriminatory intent. <u>Id</u>.  Plaintiff respectfully asserts that she has met her burden under the more onerous state standard, and has therefore has satisfied her burden of proof under the NYCHRL.  As such, Defendants' application for summary judgment in this context must also be denied.

2.  Ms. Collymore has Adduced Sufficient Evidence When Viewed in the Totality to Establish Her Race
    Discrimination Claims

Plaintiff has presented triable issues of fact regarding her claims of race discrimination.  In support this aspect of

her lawsuit, she has cited Defendants' discriminatory hiring practices as determined by the EEPC.  She has referenced

Defendants' low balling her and hiring her in the lesser paying Project Manager of Training position, when she applied

to two other positions for which she was more qualified.  Defendants hired Ms. Cruz, a lesser qualified white woman

for at least one of the positions she sought.  As the record established, at the time relevant, Ms. Cruz did not have a

Master Degree, any of the certifications Ms. Collymore possessed and or even a comparable amount of professional

experience.  Ms. Collymore was also able to establish that she and Vera Olave, another racial minority, were treated

less well than white ECTP staff members.  She testified that both were denied training, that both were paid less

money and that both were regularly harassed and ridiculed by Defendants Austin and Maluf.

Ms. Collymore has also been able to show that unlike her white male counterparts, she was forced to change

her work hours; was denied compensatory time; was denied over time; and was assigned a disproportionately heavier

workload.  To refute these claims, Defendants have referenced an email that allegedly changed the hours of all ECTP

staff at least three weeks before Ms. Collymore was constructively discharged.

However, Ms. Collymore testified that she had at least one conversation where white male staff members

confided in her that they had a gentlemen's agreement with Defendants when it came to their hours, compensatory

and over time.  In a further effort to bolster their claims, Defendants cite Ms. Collymore's compensatory time

balances rather than her over time balances.  Again the two are distinct, the latter provides actual monetary

compensation for time worked.  There was a triable issue of fact as to whether Ms. Collymore needed either

compensatory or over time to do her job.  Regardless of the shift that Defendants assigned her, due to the nature of

her job, she would have to work beyond an 8 hour work day to accommodate the training vendors.  Ms. Collymore

would either have to get to work at 7AM to allow the vendors in or stay beyond 5PM to accommodate Defendants'

meetings.  Since Ms. Collymore was covered by the union, she was required to work an 8 hour day or a 40 hour work week.  This was despite Defendants efforts to have her work additional hours without compensation of any kind. Based on the foregoing, when viewed in the totality and in context, Plaintiff made a prima facie claim of race discrimination under the NYCHRL.

**POINT V**
**PLAINTIFF'S CLAIMS OF AIDING AND ABETTING**
**UNDER THE NYSHRL AND NYCHRL SHOULD NOT BE DISMISSED**

The language that prohibits aiding and abetting is virtually identical under the NYSHRL and NYCHRL, accordingly Courts in this Circuit have applied the same standard of analysis.  Colon v. New York City Hous. Auth., 16 CV 4540(VSB), 2021 U.S. Dist. LEXIS 100601, at * 62 (S.D.N.Y. May 26, 2021) citing Feingold v. New York, 366 F.3d 138, 158 (2d Cir. 2004)  Thereby, pursuant to § 296(6) and § 8-107(6), it is an unlawful discriminatory practice "for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under the Article or to attempt to do so."  De Sio v. Singh, 19 Civ. 3954 (JCM), 2021 U.S. Dist. LEXIS 185740, at *76-77 (S.D.N.Y. Sept. 28, 2021)

The Second Circuit has read both statutes broadly, and has found that supervisors and co-workers could be held liable even if they did not have the ability to hire and fire employees, so long as they actually participate[d] in the conduct giving rise to the discrimination.  Annunziata v. IBEW Local Union, #363, 15-CV-03363(NSR), U.S. Dist. LEXIS 89234, at *65-66, 2018 WL 2416568 (S.D.N.Y. May 29, 2018)

In the matter herein, Defendants Austin, Maluf and Kirks directly participated in the wrongs alleged herein. Each of the individually named Defendants either directly discriminated, contributed to the retaliation and or hostile work environment that Ms. Collymore experienced. Stathatos v. Galla Res. LLC., 06 Civ. 13138, 2010 U.S. Dist. LEXIS 50511, 2010 WL 2024967 at * 8 (S.D.N.Y. May 21, 2010) Therefore, since, Ms. Collymore has been able to meet her prima facie burden for her retaliation, sexual harassment and discrimination claims, the Court must also deny Defendants' application to dismiss her claims of aiding and abetting.

**V. CONCLUSION**

For the foregoing reasons, Ms.  Collymore requests that Defendants' motion for summary judgment be denied in its entirety; she also seeks any and all other relief this Court deems just and proper.

Dated: July 15, 2022

/s/ Special Hagan

_____

Special Hagan, Esq.
Attorney for Robin Collymore
88-08 Justice Avenue 16i
Elmhurst, New York 11373
special@haganlawoffices.net
(917) 337-2439