UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ROBIN COLLYMORE,

                    Plaintiff,

-against-

CITY OF NEW YORK; LISA MALUF; MATTHEW AUSTIN; AND DAVID KIRKS in their individual capacities and as aiders and abettors,

                    Defendants.

16-CV-8270-LTS-OTW

---

<u>MEMORANDUM ORDER</u>

Robin Collymore ("Plaintiff") brought this civil rights action against the City of New York, Lisa Maluf, Matthew Austin, and David Kirks (collectively, "Defendants"), individually and as aiders and abettors, pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. ("Title VII"), 42 U.S.C. §§ 1981, 1983, New York State Human Rights Law, Executive Law § 296 et seq. ("NYSHRL"), and the Administrative Code of the City of New York, § 8-107 et. seq. ("NYCHRL").  Plaintiff's surviving claims allege employment discrimination on the basis of race and sex, sexual harassment, retaliation, and aiding and abetting those violations.  (Docket entry no. 39.)  The Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. sections 1331 and 1367.

Defendants now move, pursuant to Federal Rule of Civil Procedure 56(a), for summary judgment on all remaining claims.  (Docket entry no. 211.)  The Court has considered the parties' submissions carefully, and, for the following reasons, Defendants' motion is granted in its entirety.

BACKGROUND

Except as otherwise noted, the following material facts are undisputed.[1]  Plaintiff Robin Collymore is an African American woman who started working at the Department of Information Technology and Telecommunications ("DoITT"), a municipal agency of New York City, on August 3, 2015.  (Def. 56.1 ¶¶ 6-7.)  Collymore was hired as the Project Manager of Training in the Emergency Communications Transformation Program ("ECTP").  (Id. ¶ 7.)  During the relevant period, Lisa Maluf was Plaintiff's indirect supervisor and acting chief of staff and Deputy Program Manager for the ECTP at the DoITT, Matthew Austin was Plaintiff's direct supervisor and Director of ECTP Project Management at the DoITT, and David Kirks was Plaintiff's indirect supervisor and Associate Commissioner and Director of ECTP.  (Def. 56.1 ¶¶ 12-15.)

During her time at DoITT, Collymore made several formal and informal complaints of unwanted touching by Maluf and hostile behavior by Austin.  (Def. 56.1 ¶ 1.)  Collymore alleges that Maluf touched her and her coworkers "repeatedly" during one-on-one meetings.  (AC ¶¶ 65-66, 119.)  Collymore first advised Maluf that she did not like to be touched in the workplace sometime in September 2015.  (Def. 56.1 ¶ 16.)  Following this conversation, Collymore alleges Austin and Maluf began to treat her with increasing hostility.  (See docket entry no. 225-8 ("Collymore Decl.") ¶¶ 25-28.)  Plaintiff alleges that, over the next few months, Austin and Maluf were more critical of her work, heavily scrutinized her schedule, and berated

---

[1]  The facts presented or recited as undisputed are drawn from the parties' statements pursuant to S.D.N.Y. Local Civil Rule 56.1, or from evidence as to which there is no non-conclusory factual proffer. Citations to Defendants' Local Civil Rule 56.1 Statement (docket entry no. 213, Defendants' Statement of Undisputed Facts Pursuant to Rule 56.1 ("Def. 56.1")) or Plaintiff's Rule 56.1 Statement (docket entry no. 226, Plaintiff's Statement of Undisputed Facts Pursuant to Rule 56.1 ("Pl. 56.1")) incorporate by reference citations to the underlying evidentiary submissions.

her on several instances. (AC ¶¶ 71-82.) She further alleges that Austin and Maluf purposefully scheduled lunchtime meetings to force Collymore to work during her lunch hour, which she needed to maintain to prevent migraines. (AC ¶¶ 76-77.)

On January 6, 2016, Austin sent Collymore a negative performance review, which criticized her failure to meet project deadlines or provide updates. (Def. 56.1 ¶ 17; docket entry no. 214-10.) The next day, Austin and Collymore had a one-on-one meeting (docket entry no. 227-12), during which, Collymore alleges, she informed Austin of her chronic migraines and Austin was increasingly hostile and demeaning (docket entry no. 227-4 ("Collymore Dep.") at 138:14-23, 142:10-13). On January 7 and January 15, 2016, Collymore reported Austin to DoITT's Office of Equal Employment Opportunity and Diversity ("EEO") for aggression during their meeting. (Docket entry nos. 227-29, 227-30.) EEO resolved these complaints on January 29, 2016, for "a lack of substantiation" and took no further action. (Docket entry no. 214-20.)

Beginning around February 19, 2016, Austin invited Collymore to a scheduled weekly team meeting that ran until 12:30 p.m. (Docket entry no. 214-29 at 10.) On March 31, 2016, Austin emailed Collymore to discuss what he described as her "excessive" undocumented sick leave over the prior six months. (Def. 56.1 ¶ 21; docket entry no. 227-33.) In response, Collymore provided Austin with medical documentation of her migraines and corresponding treatment plan, which did not mention any specific lunch hour accommodation. (Id.) On April 11, 2016, Collymore declined a biweekly lunchtime meeting invite from a non-defendant coworker, Rachel Cruz, without providing explanation. (Docket entry no. 214-27.) One week later, Maluf and Collymore had an argument regarding Collymore's absence from the meeting. (Id.) In that exchange, Collymore explained that she was instructed "to decline meetings that conflicted with our union lunch hours." (Id.) Maluf informed Collymore that there was no union

requirement for a specific lunch hour and that she was expected to attend relevant business meetings. (Id.) The following week, on April 22 and April 25, 2016, Collymore reported Maluf to the EEO for sexual harassment. (Def. 56.1 ¶¶ 25-26.) The EEO followed up with Collymore and spoke to Maluf about the allegation, but no disciplinary action was taken. (Def. 56.1 ¶ 28; docket entry no. 214-32.)

On June 22, 2016, Collymore complained to David Kirks about Austin and Maluf, and informed Kirks that she would resign if no action was taken. (Collymore Decl. ¶ 73.) No disciplinary action was taken at that time, and Collymore resigned on June 28, 2016,[2] with an effective resignation date of July 12, 2016. (Def. 56.1 ¶ 9; docket entry nos. 214-8, 214-9.)

PROCEDURAL HISTORY

On January 25, 2016, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). (EEOC Compl.) In her EEOC charges, Plaintiff claimed that her DoITT supervisors discriminated against her on the basis of sex, race, and age. Plaintiff claims that she received a notice of right to sue letter on July 26, 2016. (AC ¶ 15.) Plaintiff then filed the Amended Complaint in this action on August 21, 2017. (Id.) On June 14, 2018, this Court granted Defendants' 12(b)(6) Motion to Dismiss all claims arising under federal law and declined to exercise supplemental jurisdiction over all of Plaintiff's state

---

[2] The Court notes that, in this motion practice, Collymore asserts the exact manner of her resignation is disputed. (Pl. Mem at 14, 23; Pl. 56.1 ¶ 9.) Collymore has repeatedly plead that she did – in fact – resign and was not terminated (AC ¶¶ 6, 7, 18, 86, 87, 157, 169, 204), and she cannot now "attempt to defeat a summary judgment motion by contradicting factual allegations in [her] complaint." See Rojas v. Roman Catholic Diocese, 783 F. Supp. 2d 381, 407 (W.D.N.Y. 2010), aff'd 660 F.3d 98 (2d Cir. 2011) (collecting cases). The dispute regarding the specific date and manner of Collymore's resignation is not material for the Court's analysis.

law claims.  (Docket entry no. 57.)  On April 11, 2019, the Second Circuit affirmed in part and vacated in part this Court's decision, remanding for further consideration Plaintiff's section 1983 and Title VII retaliation claims, and thus reviving the question of whether this Court should exercise supplemental jurisdiction over the remaining city and state law claims.  (Docket entry no. 68.)  Following discovery, Defendants moved for summary judgment on all remaining claims pursuant to Rule 56 of the Federal Rules of Civil Procedure.  (Dock entry no. 211.)  Plaintiff opposed Defendants' motion.  (Docket entry no. 224.)

## DISCUSSION

Standard of Review

Summary judgment is appropriate when the record shows that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 322-26 (1986).  A genuine dispute exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248.  Thus, a party that is unable to "make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial" will not survive a Rule 56 motion.  Celotex, 477 U.S. at 322. Specifically, the party who bears the burden of proof at trial "must do more than simply show that there is some metaphysical doubt as to the material facts and they may not rely on conclusory allegations or unsubstantiated speculation." Jeffreys v. N.Y.C., 426 F.3d 549, 554 (2d Cir. 2005) (citations omitted).  The moving party bears the burden of demonstrating the absence of a material fact, and the court must be able to find that, "'after drawing all reasonable

inferences in favor of a non-movant, no reasonable trier of fact could find in favor of that party.'" Marvel Entm't, Inc. v. Kellytoy (USA), Inc., 769 F. Supp. 2d 520, 523 (S.D.N.Y. 2011) (quoting Heublein v. United States, 996 F.2d 1455, 1461 (2d Cir. 1993)).  Where the party opposing summary judgment "fails to properly address [the moving] party's assertion of fact . . . the court may . . . consider the fact undisputed for purposes of the motion."  Fed. R. Civ. P. 56(e)(2).

Retaliation Claims

    Federal Retaliation Claim

The sole remaining federal claims before this Court are the Plaintiff's retaliation claims under Title VII and section 1983, which are evaluated under the three-step burden shifting analysis established in McDonnell Douglas Corp v. Green, 411 U.S. 792, 802 (1973); see also Vega v. Hempstead Union Free Sch. Dist., 801 F.3d 72, 91 (2d Cir. 2015) ("[T]he elements of a retaliation claim based on an equal protection violation under § 1983 mirror those under Title VII.").  The first step requires Plaintiff to proffer evidence establishing a prima facie case of retaliation.  McDonnell Douglas., 411 U.S. at 802; St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 506 (1993).  Plaintiff must demonstrate (1) she participated in a protected activity, (2) the defendant knew of the activity, (3) Plaintiff suffered an adverse employment action, and (4) a causal connection between the protected activity and the adverse action.  Szwalla v. Time Warner Cable LLC, 670 F. App'x 738, 740 (2d Cir. 2016).  If the Plaintiff can establish a prima facie claim, the burden then shifts to the Defendants to offer a permissible explanation for the adverse employment action.  Gibbs v. Consol. Edison Co. of N.Y., 714 F. Supp. 85, 89 (S.D.N.Y. 1989).  Finally, the burden shifts back the Plaintiff to offer proof that would enable a

reasonable fact finder to conclude that Defendant's proffered reason was a pretext for prohibited discrimination.  Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S.133, 143 (2000); accord Schnabel v. Abramson, 232 F.3d 83, 88 (2d Cir. 2000).

It is undisputed that Collymore participated in a protected activity by complaining about Maluf's unwanted touching and by filing several EEO complaints, beginning around September 2015.  (Def. 56.1 ¶¶ 16, 22, 24, 26.)  It is also undisputed that the Defendants were aware of several of these reports.  (Def. 56.1 ¶ 16, docket entry nos. 214-12, 214-32.)

To demonstrate that she suffered an adverse action, Plaintiff must show that the treatment she suffered was "materially adverse," meaning that it "might well have dissuaded a reasonable worker from participating in a protected activity."  Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006).  On appeal, the Second Circuit found that most of Plaintiff's allegations that "Maluf and Austin were harsh with her and yelled at her" fell into the category of "nonactionable 'petty slights, minor annoyances, and simple lack of good manners.'"  Collymore v. City of N.Y., 767 Fed App'x. 42, 46 (2d Cir. 2019) (quoting Burlington N., 548 U.S. at 68). Following discovery, Plaintiff has not provided evidence to demonstrate that these incidents amounted to materially adverse action, and thus likewise fails to satisfy her burden at the summary judgment stage.

Plaintiff's sole remaining argument asserts that she suffered an adverse action when Maluf and Austin repeatedly scheduled meetings to force her to work through her lunch hour despite knowing that Collymore needed to maintain a specific lunch hour to prevent migraines.  Collymore, 767 Fed App'x. at 46.  The evidentiary record, when viewed in the most favorable light to Collymore, supports a finding that Collymore was scheduled for several

lunchtime meetings during her ten months at DoITT.³ (See docket entry nos. 225-12, 214-27, 214-29 at 10.) The first of these meetings occurred on August 19, 2015, from 1:30 – 2:00 p.m. (docket entry no. 225-12 ("August Meeting") at 3), the second was a recurring weekly meeting invite scheduled from 10:00 a.m. – 12:30 p.m. beginning in February 2016 (docket entry no. 214-29 at 10 ("February Meetings")), and the last invite occurred every two weeks from 1:00 – 2:00 p.m., starting on April 11, 2016 (docket entry no. 214-27 ("April Meetings") at 10). Austin sent the August and February meeting invites, both of which were group meetings involving five and over fifty attendees, respectively. (August Meeting; February Meetings.) Viewed in the light most favorable to Collymore,⁴ these invites show that she was asked to attend around fourteen lunchtime meetings after reporting Austin's conduct in January 2016.

Finally, Collymore has provided sufficient evidence to support an inference, at the prima facie stage, that retaliation was a but-for cause of the scheduled lunch meetings. The February and April meetings began only months after Collymore first complained to Maluf and weeks after she reported Austin to the EEO (docket entry nos. 227-29, 227-30). At the prima

---

3   In her brief, Plaintiff argues that Austin and Maluf purposefully scheduled lunch meetings with Collymore "a minimum of four times a month" between January and June 2016. (Pl. Mem. at 13.) In support, Plaintiff cites her own Declaration, which only states that Collymore "attended at least 3 meetings a week," and does not allege the time of these meetings or that any specific number of meetings were scheduled during her lunch hour. (Collymore Decl. ¶ 65.) Likewise, Plaintiff seems to have misread Defendants' Rule 56.1 statement, which claimed that, of fourteen documented meetings revealed through discovery, only one fell during the lunch hour. (See Def. 56.1 ¶ 46.) Therefore, Plaintiff's response to "admit and add" as undisputed fact that there were at least 13 team meetings scheduled during her lunch hour is erroneous and unsupported by the Defendants' proffer. (See Pl. 56.1 ¶ 46.)

4   The Court notes that it is disputed how often these meetings actually occurred, despite the invitation being issued for weekly or biweekly meetings. (Maluf Dep. at 307:16-308:5.) For the purposes of this motion, the Court construes the ambiguity in the evidence in Collymore's favor.

facie stage, temporal proximity alone can establish a sufficient causal connection. See Gorzynski v. JetBlue Airways Corp., 596 F.3d 93, 110 (2d Cir. 2010).

In response to Collymore's prima facie case, Defendants have proffered a non-retaliatory explanation that the meetings were infrequent, untargeted, and scheduled for business purposes. (Def. Mem. at 6-8.) "Any legitimate, non-discriminatory reason will rebut the presumption triggered by the prima facie case." Fisher v. Vassar Coll., 114 F.3d 1332, 1335 (2d Cir. 1997). Therefore, Defendants have offered a sufficient non-retaliatory explanation for the lunch meetings, and the burden then shifts back to Collymore to support an inference that the non-discriminatory reason is merely a pretext for prohibited discrimination.

A reasonable jury could not find that Collymore has satisfied this burden. First, the inference of causation arising from the temporal proximity between the protected activity and the adverse action may satisfy Collymore's prima facie burden, but proximity alone is insufficient to show that a Defendants' legitimate explanation is pretextual. El Sayed v. Hilton Hotels Corp., 627 F.3d 931, 933 (2d Cir. 2010). Collymore does not offer sufficient additional evidence to support her argument that Defendants' explanation is illegitimate. As a threshold matter, the evidence does not support a finding that Defendants scheduled meetings in order to target Collymore. Of the two lunchtime meetings scheduled after Collymore's complaints, the April Meetings were organized by a non-Defendant coworker, Rachel Cruz, who was not alleged to be involved in the retaliatory scheme, and the February Meetings were a large team meeting with over fifty other invitees (February Meetings).[5]

---

5   The Court notes that, although the Plaintiff's brief repeatedly references smaller and "one-on-one" meetings she had with Austin and Maluf, she does not provide evidence anywhere in the record – including her own testimony – that those meetings were scheduled during lunchtime. (Pl. Mem. at 13.)

Furthermore, Collymore has provided insufficient evidence to support the conclusion that Defendants Austin or Maluf even knew about her need to eat lunch at a specific time and thus could have intended to harm her by scheduling lunch meetings. Collymore testified that she informed Austin of her migraines during their January 2016 one-on-one meeting, but her testimony is self-contradictory and unclear about whether she informed Austin or Maluf of her need to eat lunch at a specific hour due to her migraines. (Collymore Dep. at 138:14-23, 142:10-13; Collymore Decl. ¶¶ 62, 68.)[6] In her declaration, Collymore states that she told Austin and Maluf of her "migraines and need to take lunch." (Collymore Decl. ¶ 68.) However, if Collymore's declaration is taken to mean that she told Austin and Maluf of her need to take lunch at a certain time due to her migraines, this statement would contradict Collymore's earlier deposition where she testified that she "wouldn't say" that she informed Maluf that she "couldn't attend a meeting during [her] lunch hour because of [her] migraines." (Collymore Decl. at 142:10-14.) Collymore cannot create a triable issue of fact simply by "submitting an affidavit in opposition to a summary judgment motion that . . . contradicts [her] previous deposition testimony." Brown v. Reinauer Transp. Co., 788 Fed. App'x. 47, 49 (citing Hayes v. N.Y.C. Dept. of Corr., 84 F.3d 614, 619 (2d Cir. 1996)).

In contrast, the record does include a wealth of evidence that Defendants were unaware of Collymore's medical needs. Austin and Maluf both testified that they were never told that Collymore needed to have a specific lunch hour due to her migraines. (See docket

---

[6] Collymore also testified that she informed Ivan Goldberg of her migraines "so that he would refrain from putting meetings during the designated time that [she] needed to take lunch." (Collymore Dep. at 138:17-20.) This is not a material fact with respect to Collymore's retaliation claim because Goldberg was not a Defendant alleged to have participated in the scheme, and she does not assert that Goldberg communicated that information to any of the Defendants.

entry no. 225-5 ("Maluf Dep.") at 103:7-16; docket entry no. 227-21 ("Austin Dep.") at 85:12-14.)  It is also undisputed that Collymore never requested workplace accommodations (Def. 56.1 ¶ 45; see also Collymore Dep. at 139:13-14), nor did she disclose her need for a specific lunch hour when she shared medical documentation of her migraines (see docket entry no. 227-33).  In every documented exchange in which Collymore objected to lunchtime meetings, she stated that her issue with those meetings was her belief (apparently mistaken) that her union "lunch hour" had to fall between 12:00 and 2:00 p.m., rather than any medical accommodation.  (See docket entry nos. 214-27, 227-34, 227-35.)

Finally, even assuming that Defendants were aware of Collymore's medical need for a set lunch hour, the record contains uncontroverted evidence that employees could and did eat during these meetings.  (Austin Dep. at 87:7-12.)  Collymore has not offered any contrary evidence to establish how the meetings prevented her from eating.

In summary, Collymore's evidentiary proffers, read sympathetically to her, depict an alleged retaliatory scheme that consisted of scheduling a single weekly meeting of over fifty attendees during half an hour of her two-hour lunch window, and during which she was free to bring and eat lunch, in order to infringe upon her undocumented medical need to eat lunch during a prescribed time period.  Even viewing the evidence in the light most favorable to Collymore, the record does not frame a triable issue of fact on this issue.  See Jeffreys, 426 F.3d at 554.  Thus, the Court finds that there is no genuine dispute as to any material fact regarding the Plaintiff's federal retaliation claim and that Defendants are entitled as a matter of law to summary judgment dismissing the claim.

Remaining State Law Claims

Because the Court grants the Defendant's motion for summary judgment on the sole remaining federal claims, the Court has the discretion to decide whether to exercise supplemental jurisdiction over the remaining state claims.  See Mine Workers v. Gibbs, 383 U.S. 715 (1966).  The Court must consider "the values of judicial economy, convenience, fairness, and comity" to determine whether to exercise supplemental jurisdiction over the remaining state law claims.  Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 (1988).  These factors counsel against exercising supplemental jurisdiction if all federal claims are dismissed in the "early stages" of litigation.  Id. at 350.  However, now that the parties have completed extensive discovery, considerations of efficiency and fairness suggest that it may be appropriate for the Court to exercise jurisdiction.  See Raucci v. Town of Rotterdam, 902 F.2d 1050, 1055 (2d Cir. 1990) (finding the exercise of supplemental jurisdiction proper where discovery had been completed, the case was ready for trial, and where the state-law claims involved only settled principles).  The Court finds that these factors weigh in favor of the exercise of supplemental jurisdiction here, where the state law claims involve settled legal principles that overlap significantly with the federal claims that have been addressed.

State and City Law Retaliation Claims

Plaintiff has failed to establish that there is any genuine issue of material fact regarding her retaliation claims under the NYSHRL and the NYCHRL.  A retaliation claim under the NYSHRL is analyzed identically to one under Title VII, and therefore must fail for the reasons explained above.  Hicks, 509 U.S. at 506.  The NYCHRL, however, does not employ the McDonnell Douglas framework.  Ya-Chen Chen v. City Univ. of N.Y., 805 F.3d 59, 75 (2d Cir.

2015).  A relation claim under the NYCHRL is subject to less demanding standards of proof as to adverse employment action and retaliatory motive.  See Dodd v. City Univ. of N.Y., 489 F. Supp. 3d 219, 268-69 (S.D.N.Y. 2020).  Collymore must still, however, proffer evidence sufficient to establish that retaliation played *any* part in the employer's adverse action.  Id. at 269.  Viewing the record as a whole, Collymore fails to meet that standard because she has not established a sufficient evidentiary basis for an inference of a retaliatory motive based on the Defendants' infrequent scheduling of large group meetings that slightly overlapped with her stated lunch hour.  Therefore, the Court grants the Defendants' motion for summary judgment dismissing each of Plaintiff's state retaliation claims.

State and City Law Sexual Harassment Claims

    Nor has Plaintiff not established a genuine issue of material fact regarding her and local law sexual harassment claims.  A hostile work environment claim under the NYSHRL is analyzed identically to such a claim under Title VII.  Tolbert v. Smith, 730 F.3d 427, 438-39 (2d Cir. 2015).  To establish a prima facie case under the NYSHRL, Collymore must show that the discriminatory harassment she experienced was because of a protected characteristic.  Id. at 439.  Additionally, while the NYCHRL imposes a lower threshold for abusive conduct, Collymore must still establish that her poor treatment was "because of her sex."  Mihalik v. Credit Agricole Cheuvreux N. Am., Inc., 715 F.3d 102, 110 (2d Cir. 2013).

    Therefore, even if Maluf's unwanted touching rose to the level of harassment, Collymore's sexual harassment claims fail because she has not proffered evidence sufficient to establish that Maluf's behavior was sex-based.  In her Complaint, Collymore alleged that Maluf's touching was widespread, and she did not allege the behavior was targeted to one sex.

(AC ¶ 67.)  Collymore also testified, when asked whether she remembered Maluf touching individuals other than two men she mentioned specifically, that Maluf "touched everyone." (Collymore Dep. at 90:15-18.)  She said nothing to suggest a predominance of attention to Collymore herself, or to women in general.  Nevertheless, Collymore argues in this motion practice that Maluf's behavior was sex-based, pointing to (1) her own conclusory declaration that Maluf touched women more than she touched men, and (2) Maluf's testimony that she had "caught herself" touching two women – Tanya Murphy and Widade Larchan – after Collymore had complained.  (Pl. Mem. at 26; see also Collymore Decl. ¶ 48; Maluf Dep. at 91:15 – 92:15.) Collymore's conclusory declaration stating, in contrast to her testimony at deposition, that she "observe[d] Ms. Maluf touch women more than men in the office," is insufficient to create a triable issue of fact.  (Collymore Decl. ¶ 48; see also Jeffreys, 426 F.3d at 554 (finding conclusory allegations insufficient to create a triable issue of fact); Hayes, 84 F.3d at 619 ("[A] party may not create an issue of fact by submitting an affidavit in opposition to a summary judgment motion that . . . contradicts the affiant's previous deposition testimony.").) Additionally, the fact that Maluf admitted to touching Murphy and Larchan does not itself establish that she engaged in a pattern of harassment against women because of their sex, particularly in light of Collymore's testimony that Maluf "touched everyone" including two men, Gene Yurman and David Kirks.  (See Collymore Dep. at 70:7-8, 75:16-24; see also Brennan v. Met. Opera Ass'n, Inc., 192 F.3d 310, 318-19 (2d Cir. 1999) (finding that indiscriminate harassment that is not targeted to any one sex cannot be because of sex).)

      Therefore, Collymore has provided insufficient evidence to create a genuine issue of material fact as to whether Maluf's touching was sex-based, and the Court must grant the Defendants' motion for summary judgment.

State and City Law Discrimination Claims

Plaintiff has also failed to establish that there is any genuine issue of material fact regarding her state and local law discrimination claims.  The analysis of a discrimination claim under the NYSHRL mirrors the Title VII analysis.  Tolbert, 730 F.3d at 434.  Accordingly, to prevail, Collymore would need to satisfy the McDonnell Douglas burden shifting framework by first establishing a prima facie claim that (1) she is a member of a protected class, (2) she was qualified for her position, (3) she suffered an adverse employment action, and (4) that adverse action occurred under circumstances giving rise to an inference of discrimination.  Id. at 435.  An "adverse employment action" is a "materially adverse change in the terms and conditions of employment" and, "to be materially adverse, a change in working conditions must be more disruptive than a mere inconvenience or an alteration of job responsibilities."  Sanders v. N.Y.C. Hum. Res. Admin., 361 F.3d 749, 755 (2d Cir. 2004) (citation omitted).

The Second Circuit found that Collymore's complaint did not sufficiently allege that she suffered an adverse employment action because most of her allegations did not "constitute an actionable change in the terms and conditions of employment and [we]re more in the nature of petty slights."  Collymore, 767 Fed App'x. at 45.  Her factual allegations that (1) she was denied overtime requests, and (2) she suffered disparate treatment compared to her white and male colleagues, were found insufficient.  Even with the benefit of discovery, Plaintiff has failed to bolster these arguments sufficiently to raise a genuine issue as to whether she suffered a materially adverse employment action.

First, Plaintiff fails to further substantiate her argument that Defendants denied her overtime while granting her white, male coworkers overtime compensation.  (Pl. Mem. at 22-

23.)  Collymore only provides testimony that she was denied overtime on one occasion, which is insufficient to show a fundamental change in the conditions of her employment.  (See Collymore Decl. ¶ 76.)  She provides no further support for her assertions that she was denied overtime more frequently than other employees.  Defendants provide opposing evidence that Collymore was granted overtime on several occasions, in accordance with ECTP policy.  (Austin Dep. at 184:11-22.)

    Second, Plaintiff fails to provide sufficient evidence of any disparate treatment she experienced compared to her coworkers Rachel Cruz and Gene Yurman.  Collymore argues that Cruz was a "less qualified white woman" hired for a position Collymore originally sought, but she does not provide evidence that Cruz was paid more than Collymore or otherwise treated better in any material way.  See Collymore, 767 Fed. App'x. at 45-46 (citing Lavin-McEleney v. Marist Coll., 239 F.3d 476, 480 (2d Cir. 2011)).  Similarly, Collymore does not provide admissible evidence supporting her conclusory assertions that her male coworkers were treated better than she was in the workplace.  (Pl. Mem. at 26.)  In addition to her previously discussed allegations regarding Maluf's unwanted touching, the only evidence Collymore provides to show that she experienced sex-based discrimination consists of Yurman's alleged out-of-court statements purportedly corroborating her disparate treatment.  (Id.)  Inadmissible hearsay cannot satisfy Collymore's evidentiary burden on a motion for summary judgment.  Sarno v. Douglas Elliman-Gibbons & Ives, Inc., 183 F.3d 155, 160 (2d Cir. 1999).

    Therefore, Collymore has failed to frame a genuine issue of material fact regarding any adverse employment action she allegedly suffered, and Defendants are entitled as a matter of law to judgment dismissing her NYSHRL claims.

Plaintiff's NYCHRL claims fail as well, because Collymore has not shown that discrimination played *any* role in any negative treatment she experienced. Smalls v. N.Y. Hosp. Med. Ctr. of Queens, 2015 WL 5437575 (E.D.N.Y. 2015). Plaintiff provides no evidence to substantiate her conclusory assertions that she was the victim of racial or sexist animus. Collymore testified that Defendants "would" commit racial and sexist micro-aggressions against her, but she did not offer any specific examples. (Collymore Dep. at 79:24 – 80:10.) The only other evidence Collymore offers to show Defendants' discriminatory intent is inadmissible hearsay attributed to witnesses who were not deposed and from whom no declarations were, apparently, obtained. (Pl. Mem. at 26.) Collymore's unsupported, conclusory assertions cannot defeat a motion for summary judgment. Jeffreys, 426 F.3d at 554. Thus, Plaintiff has failed to meet her evidentiary burden with respect to her NYCHRL discrimination claims, and Defendants are entitled to summary judgment as a matter of law.

Aiding and Abetting

To prevail on a claim of aiding and abetting conduct in violation of the NYCHRL and the NYSHRL, Plaintiff would have to show that the Defendants "actually participated in the [discriminatory] conduct." Ananiadis v. Mediterranean Gyros Prods., Inc., 151 A.D.3d 915, 917 (2d Dept. 2017). Where there is no primary violation, "there can be no liability for aiding and abetting." White v. Pacifica Found., 973 F. Supp. 2d 363, 378 (S.D.N.Y. 2013). This analysis is the same under both the NYCHRL and the NYSHRL. Feingold v. New York, 366 F.3d 138, 158 (2d Cir. 2004). Because the Court has granted the Defendants' motion for summary judgment on

all predicate offenses, the Court must also grant the Defendants' motion for summary judgment on all aiding and abetting claims.

## CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is granted in its entirety. The pretrial conference currently scheduled for September 15, 2023, is cancelled. This Memorandum Order resolves docket entry no. 211.

The Clerk of Court is respectfully directed to enter judgment in favor of Defendants and to close the case.

SO ORDERED.

Dated: New York, New York
September 8, 2023

                                        /s/ Laura Taylor Swain
                                        LAURA TAYLOR SWAIN
                                        United States District Judge